Brady, J.
The multi-count complaint in this action purports to state claims against the defendants for defamation, retaliation for filing a gender discrimination claim under G.L.c. 151B, violation of civil rights under G.L.c. 12, §11H, and violation of the Massachusetts Declaration of Rights. I allowed defendants’ motions to dismiss from the bench during oral argument on November 4, 1999, commenting during argument that the case struck me as frivolous. Defendants now move for sanctions pursuant to G.L.c. 231, §6F and Mass.R.Civ.P. 11. After hearing, I allow the motion pursuant to §6F. My reasons follow.
I take the basic facts as recited in the complaint. The plaintiff Dace is a tenured professor at the University of Massachusetts at Dartmouth (UMD). Effective September 1, 1997, she was promoted to the position of Chancellor Professor. The defendant Hick-ock is employed as Executive Director of Information/News/Publications. Dace has a discrimination case pending in Plymouth County Superior Court against UMD for failure to promote her to the rank of Chancellor Professor earlier.
Dace and Hickock are members of the Affirmative Action Committee at UMD. Dace is a co-chair of the committee. The committee is an advisory committee which does not make any decisions regarding financial or other policies for UMD.
*209 Dace invited Diane Barenese, a professor at UMD and co-chair of the University of Massachusetts Dartmouth Women’s Legal Defense Fund, to speak to the committee at the March 2, 1998 meeting. The subject of her talk was gender discrimination claims against UMD by nine women. Hickock asked at the meeting who invited Barenese to speak. Dace and Barenese said Dace did. Hickock then said that Dace had a conflict of interest because Dace filed a lawsuit alleging gender discrimination against UMD. Hickock later approved minutes of the March 2, 1998 meeting that reflected that she “voiced her concern that there is a conflict of interest in Tish Dace’s request that Diane speak to the Affirmative Action Committee because Tish currently has a lawsuit against UMD alleging gender discrimination and Tish is being supported financially by the UMD Women’s Legal Defense Fund which Diane represents.”
Dace, upon review of the draft minutes, e-mailed Hickock that the statement that Dace was being supported financially by the UMD Women’s Legal Defense Fund was not true. She asked Hickock to delete the statement. Also on March 27, the co-chairs of the UMD Women’s Legal Defense Fund e-mailed Hickock that Dace had never applied for nor received money from the UMD Women’s Legal Defense Fund. Hickock refused to delete the statement. At a May 4, 1998 Affirmative Action Committee meeting, Hickock insisted that the statement remain in the minutes. In fact, Dace receives funds for her gender discrimination lawsuit from the American Association of University Women.
At the May 4, 1998 meeting, Hickock requested Dace to step down as chair of the Affirmative Action Committee and to recuse herself from any further involvement in the committee until her lawsuit was resolved.
On June 5, 1998 Dace sent a memo to the Affirmative Action Committee justifying her inviting Barenese to the meeting, commenting in the memo that “Maeve, the Chancellor’s spin doctor, doesn’t want you to know about them. Should she, given her conflict of interest, be allowed to censor what you hear? In trying to censor what you heard, Maeve has revealed her biases, her vested interest in denying that UMD discriminates.” The memo challenged Hickock’s position in other respects not necessary to detail. Dace ends her memo by asserting that Hickock was using “this defamation to discredit me in retaliation for my filing the law suit.” In response, Hickock sent Dace a copy of UMD’s “Principles of Employee Conduct,” and wrote that Dace’s June 5, 1998 “missive” violated a number of these standards. She requested an apology. Dace, unapologetic, filed another charge of discrimination with the MCAD, then filed this lawsuit against Hickock and UMD on August 20, 1999.
Count One of the complaint contends that the verbal statement of Hickock at the March 2, 1998 meeting, “you have a conflict of interest,” was defamatory. Under the circumstances in which the statement was made, it was not defamatory because it does not hold the plaintiff up to scorn, hatred, ridicule, or contempt, in the mind of any considerable and respectable segment of the community. Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 853 (1975). But even if one could interpret it as such, it is a non-actionable expression of opinion. Hickock disclosed the basis of her conclusion, namely that Dace had a discrimination lawsuit pending. The underlying fact of the lawsuit was true and non-defamatory. Whether Dace had a conflict of interest as a result of the lawsuit is a matter of pure opinion. Whether she did or not is a reasonable subject to raise for discussion in a committee such as this, but in any event, as the cases have repeatedly held, the mere expression of opinion based on disclosed non-defamatory facts cannot be the basis of a defamation claim. King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987); Aldoupolis v. Globe Newspaper Co., 398 Mass. 731, 733-34 (1986); Fleming v. Benzaquin, 390 Mass. 175, 180-86 (1983); Cole v. Westinghouse Broadcasting Co., Inc., 386 Mass. 303, 308-13 (1982); Meyers v. Boston Magazine Co., Inc., 380 Mass. 336, 341 (1980).
Count Two likewise claims defamation against Hickock for the statement in the minutes of the March 2, 1998 meeting that Dace was being supported by the UMD Women’s Legal Defense Fund which Barenese represents. In fact, according to the complaint, Dace was being financially supported by the American Association of University Women. The crux of the defamation claim is not the precise identity of the organization funding her lawsuit. Dace does not contend that there is anything defamatory in saying that a person’s lawsuit is funded by a particular organization. Hickock’s statement that Dace was being funded by the Women’s Legal Defense Fund may have been untrue, but it was not defamatory. The underlying claim of Count Two is again the statement that Dace had a conflict of interest. Again, however, this is pure opinion which is not actionable under the law of the Commonwealth.
Dace claims that Hickock’s “conflict of interest” statement is defamatory per se because it imputes a crime. The specific crime is not revealed in the complaint, but we learn at argument that the statement supposedly implicates G.L.c. 268A. That is a farfetched, and legally untenable, construction of the statement. Nothing in the underlying facts of the complaint remotely suggests that Hickock was accusing Dace of a crime. As pled, Hickock did nothing more than raise a question of a generic conflict of interest. Dace responded, according to the minutes of the meeting attached to the complaint, by claiming that Hickock herself had a conflict of interest due to her position as the University’s public relation spokesperson. Dace repeated her contention in her memo of *210 June 5, 1998. There is not the slightest hint that the verbal contestants here were accusing each other of criminal misbehavior.
Count Three contends that Hickock’s “defamatory statements” were means of retaliation against Dace for filing her discrimination claim. It further asserts that Hickock’s request that she step down from the Affirmative Action Committee while the Plymouth County case was pending was threatening, intimidating and/or interfering with Dace’s exercise of her rights under c. 15 IB. Further, this count alleges that Hickock’s letter of July 9, 1998 implied a threat of disciplinary action against Dace as a means of threatening and intimidating and/or interfering with Dace in Dace’s exercise of her rights under c. 15 IB.
There is no claim that Dace’s employer, UMD, took any adverse employment action against her whatsoever. Whether Dace should step down from the Affirmative Action Committee until resolution of her discrimination case was a reasonable point to discuss under the circumstances pled; but in any event, she did not suffer an adverse employment decision. That is an element of a retaliation claim under c. 151(B), §4(4). See MacCormack v. Boston Edison Co., 423 Mass. 652, 662 (1996).
Plaintiff is a tenured professor at UMD. Hickock is an employee of UMD, and a member of the university staff with no supervisory or other authority over Dace. Hickock was serving as a member of a university committee along with Dace, and was entitled to raise a question about Dace’s conflict of interest without being sued under a bogus claim of retaliation or threatening to retaliate.
Count Four contends that Hickock “speaks or acts on behalf of UMD and Chancellor Cressy.” Because of Hickock’s acts, Dace contends that UMD has threatened, intimidated and/or interfered with Dace in Dace’s exercise of her rights under c. 151B, and that UMD has discriminated and retaliated against Dace because Dace opposed practices forbidden under c. 15 IB. Although it is true that threatening or intimidating a person in retaliation for filing a discrimination claim is actionable under c. 15IB, §4(4A), see Bain v. Springfield, 424 Mass. 758, 765 (1997), that is not what happened here. Hickock did not threaten or intimidate Dace. She expressed a non-defamatory opinion about Dace’s conflict of interest protected by the First Amendment. As Justice Fried pointed out in the Bain case, the interest in remedying discrimination is weighty, but not so weighty to justify what amounts to a restriction on speech. Id. at 767.
Count Five alleges Hickock interfered with Dace’s right of access to the courts in violation of G.L.c. 12, §11(H) (Massachusetts Civil Rights Act). Nothing said or done by Hickock, as pled, constitutes the threat of or interference with Dace’s right of access to the courts. Hickock’s letter of July 9, 1998 did not threaten discriminatory action; it requested an apology.
Count Six contends that Hickock interfered with her access to the courts and thus purports to state a direct claim under the Massachusetts Declaration of Rights. Dace has no such cause of action. Her counsel has cited no case which suggests that she does.
DISCUSSION
I conclude that the claims made by Dace against Hickock and UMD were wholly insubstantial, frivolous and not advanced in good faith. I will therefore award reasonable counsel fees and expenses against the plaintiff under G.L.c. 231, §6F.
The claims are transparently without merit, a fact that was or should have been obvious to plaintiff and her counsel. “You have a conflict of interest,” followed by Hickock’s statement of non-defamatory reasons is non-actionable pure opinion. Were that not clear from the outset, a minimum of legal research would have revealed it. The plaintiff did not suffer any adverse job action, nor was she ever threatened with such. An agenda beyond compensatory damages for a real violation of rights is evidently being pursued here. The defendants’ memorandum puts it this way. “The filing of this action was a vengeful, hurtful act, and it was not one related in any way to the attempt to redress . . . legitimate grievances. Rather this complaint smacks of a personal vendetta against Ms. Hickock and the University.” I concur.
Dace, a tenured professor of many years now holding the significant rank of Chancellor Professor, is obviously an intelligent person. She is quite familiar with and experienced with anti-discrimination litigation. She is represented by the same counsel in the pending Plymouth County case. Dragging a co-member of a university committee into a Superior Court lawsuit, on such tenuous grounds, for expressing a reasonable and constitutionally protected opinion about Dace’s possible conflict of interest, is in my view highly improper. As the SJC has pointed out in encouraging prompt disposition by summary judgment of defamation claims, allowing a trial to take place in a meritless case puts a serious damper on freedom of expression. King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987). In an academic setting such as this, the bringing of this baseless lawsuit is particularly egregious.
Accordingly, I award $4,100.00 as reasonable legal fees to defendants in defending this action. Defense counsel’s affidavit estimates he has spent approximately 20.5 hours handling the case, at $200.00 per hour, a rate I find to be fair and reasonable.
ORDER
Counsel fees shall be assessed against the plaintiff in the amount of $4,100.00.