Gants, J.
The plaintiff, Carmen Igartua, was employed by the defendant City of Newton (“the City”) as a clerk from 1986 until July 28, 1998. Ms. Igartua claims that, for much of that time, the City discriminated against her on the basis of her gender, national origin, and handicap, and retaliated against her when she complained about the discrimination. She also contends that the pervasive discrimination she suffered ultimately led to her constructive termination. The City now seeks partial summary judgment on Counts III and IV of her complaint, which allege discrimination on the basis of her national origin and handicap, in violation of G.L.c. 151B.[1] After hearing, for the reasons detailed below, the motion for partial summary judgment is DENIED as to Count III (national origin) and ALLOWED as to that part of Count IV which alleges handicap discrimination.[2]
I. The Claim of National Origin Discrimination
For purposes of its summary judgment motion, the City concedes that there is evidence sufficient to defeat summary judgment on Ms. Igartua’s claim of national origin discrimination except as to one necessary element of the prima facie case: that Ms. Igartua was qualified for the position and was capable of performing the job at an acceptable level. See Blare v. Husky Injection Molding Systems Boston, Inc., 419 Mass. 437, 441 (1995). In support of its motion, the City provides Employee Warning Notices and memoranda written to Ms. Igartua by A. Nicholas Parnell, the Commissioner of the Public Buildings Department (“Commissioner Parnell”), complaining about her failure to proofread correspondence, her rate of absenteeism, and her failure to record incoming telephone messages accurately. Commissioner Parnell also attests that he has complained to Ms. Igartua “at various times during her tenure in the Public Buildings Department about her poor work performance and unprofessional behavior,” including her difficulty in being understood because of her strong accent. The plaintiff insists that these complaints were spurious and were intended to retaliate against her for bringing to light her complaints about discrimination.
The fact of the matter is that the City has no system of performance appraisal and, therefore, no reliable record establishing that she was unqualified for her work and incapable of performing her job at an acceptable level. Perhaps more importantly, Ms. Igartua worked for the City for more than ten years without any effort being made to fire her. Indeed, the City contends that she resigned from her employment and was not discharged by the City. The City can hardly contend that there is no material factual dispute as to whether she was qualified for her job and capable of performing it at an acceptable level when it placed her in that job, left her in the position, and made no effort to remove her. While the City’s attorney contends that *189 incompetent employees are sometimes allowed to remain at their jobs in Newton, a factfinder is entitled to believe that the City demands a minimal level of competence from its employees and infer from the City’s failure to terminate her that she was performing her job at an acceptable level. The motion for summary judgment as to Count III, therefore, is DENIED.
II. The Claim of Handicap Discrimination
Ms. Igartua contends that she has an allergy that makes her acutely sensitive to secondary smoke. She maintains that, when she is exposed to even minimal cigarette smoke, her throat swells, and she breaks out in rashes and hives. The evidence, viewed in the light most favorable to Ms. Igartua, reflects that her doctors have told her that she needs to work in a smoke-free environment, and that she communicated to her superiors in the City her need to avoid exposure to cigarette smoke. The City contends that Ms. Igartua’s alleged acute sensitivity to smoke is not a “handicap” as defined in G.L.c. 151B, §1(17) and that, even if it were, the City has indisputably provided reasonable accommodation for any such handicap.[3]
Under G.L.c. 151B, §4(16):
It shall be an unlawful practice for any employer ... to dismiss from employment or refuse to hire, rehire or advance in employment or otherwise discriminate against, because of his handicap, any person alleging to be a qualified handicapped person, capable of performing the essential functions of the position involved with reasonable accommodation, unless the employer can demonstrate that the accommodation required to be made to the physical or mental limitations of the person would impose an undue hardship to the employer’s business.
Under G.L.c. 151B, §1(17), the term “handicap” is defined as:
(a) a physical or mental impairment which substantially limits one or more major life activities of a person; (b) a record of having such impairment; or (c) being regarded as having such impairment.
A “major life activity” includes “breathing” and “working.” G.L.c. 151B, §1(20).
If an allergic acute sensitivity to smoke is indeed a “handicap” within the meaning of G.L.c. 151B, §1(17), there certainly is a genuine issue of material fact as to whether the City provided reasonable accommodation to the plaintiff to allow her to perform her job despite her handicap. While the City did take a number of steps to address her smoke sensitivity, including building a partition around her desk, installing a “smoke-eater” above her desk that filtered and purified the air, and providing her with a fan, there is also evidence that these accommodations were inadequate to protect her from secondary smoke and that the City failed to enforce its own ordinance prohibiting smoking in public buildings after that ordinance was enacted. If the only accommodation that could adequately protect the plaintiff from an allergic reaction is to enforce a City ordinance, as the plaintiff contends, it is at least a triable issue of fact as to whether anything short of such enforcement may be found to be reasonable.
It is a far closer question whether an allergic acute sensitivity to smoke constitutes a “handicap” within the meaning of G.L.c. 151B, §1(17). For this condition to be such a handicap, it must either constitute an impairment that substantially limits one or more of the plaintiffs major life activities, or there must be a record that she has an impairment that substantially limits one or more of her major life activities, or she must be regarded as having an impairment that substantially limits one or more of her major life activities. G.L.c. 151B, §1(17). The plaintiff contends that the major life activities that are substantially limited by her acute sensitivity to smoke are breathing and working. However, in order to show that her ability to work has been substantially limited, the plaintiff must prove more than an inability to work a particular job for a particular employer; “the impairment must substantially limit employment generally.” Homeyer v. Stanley Tulchin Associates, Inc., 91 F.3d 959, 961 (7th Cir. 1996), quoting Byrne v. Board of Educ., 979 F.2d 560, 565 (7th Cir. 1992). See also Gupton v. Commonwealth of Virginia, 14 F.3d 203, 205 n.3 (4th Cir.), cert. denied, 115 S.Ct. 59 (1994), and cases cited. There is no evidence that Ms. Igartua’s allergic sensitivity to smoke substantially limits her employment in general. The plaintiff admits in her deposition that she has held other jobs since her constructive discharge by the City. There is no evidence that she cannot work in a smoke-free workplace, or that this requirement substantially limits her ability to work. Indeed, she contends in this lawsuit that she could have successfully worked for the City if it would have reduced her exposure to smoke.
Therefore, for her handicap claim to survive summary judgment, there must be a genuine issue of material fact as to whether her allergic sensitivity to smoke substantially limits her breathing. The summary judgment record, even viewed in the light most favorable to the plaintiff, reflects that the plaintiff has no reasonable expectation of proving this essential element of her handicap discrimination claim. See Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “To be successful [on summary judgment], a moving party need not submit affirmative evidence to negate one or more elements of the other party’s claim.” Id. It is sufficient to demonstrate that “proof of that element is unlikely to be forthcoming at trial.” Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991).
In her deposition, Ms. Igartua described her symptoms when she is exposed to cigarette smoke: “my throat gets swollen and I have a difficult time swallow *190 ing and ... I have a difficult time breathing and I break into hives.” (Igartua Dep. at 318.) When she gets hives, she explained, “[m]y lips get swelled up and I get blotches.” (Igartua Dep. at 318.) Earlier in her deposition, she said that smoke in the workplace made her throat swell, caused hives on her skin, and “made it very awkward to breathe.” (Igartua Dep. at 72-73.) In October 1991, she wrote to one of her superiors that, as a result of spending the day in a conference room permeated with cigarette smoke, she was sick to her stomach and ill through the night with coughing, congestion, and skin irritation. In short, when she described her symptoms from exposure to smoke, she focused primarily on the hives, the rashes, and the swollen throat, but at times indicated difficulty in breathing.
Yet, there is no evidence that she ever described any difficulty with breathing to any physician or that any physician ever observed such difficulty. There is certainly no medical record reflecting any difficulty with breathing. When she saw a doctor as a result of her exposure to smoke in the City’s workplace, the doctor described her allergic reaction as:
a blotchy skin rash which developed into a macular papular rash that was successfully treated with antibiotics. However, the blotches have continued to appear on a daily basis and are often associated with swelling of the lips.
Ms. Igartua concurred with this description of her allergic reaction. (Igartua Dep. at 361-62.)Inadoctor’s note dated January 9, 1990, Ms. Igartua complained about a chronic dry cough but denied any shortness of breath and all testing of her pulmonary function was normal. In a later doctor’s note dated April 5, 1990, Ms. Igartua was reported as having called to report hives covering her trunk and extremities, but there was no “respiratory distress.”
Viewing this evidence in the light most favorable to Ms. Igartua, she had some difficulty breathing when exposed to smoke, but there is no reasonable expectation that she can prove that her allergic sensitivity to smoke “substantially limits” her breathing. While she declares in her deposition that she has some difficulty breathing, there is no evidence that, when she saw a physician to complain about symptoms caused by secondary smoke, she ever complained about breathing problems. Nor is there any evidence that any physician she saw ever observed any breathing problem. Since the problem was not so severe to mention to a physician or to be observed by a physician, even during a visit concerning her symptoms from secondary smoke, it cannot reasonably be found to rise to the level of substantially limiting a major life activity like breathing.
This case is markedly different from Bergman v. Town of Burlington School Department, 18 MDLR 143 (1996), relied on by the plaintiff. In that case, the Massachusetts Commission Against Discrimination (“MCAD”) found a school nurse to be a qualified handicapped person and concluded that the school constructively discharged her by failing either to give her a venting window or to enforce the no-smoking ban in the school. Ms. Bergman, in contrast with Ms. Igartua, had been diagnosed by a physician as having asthma, with symptoms including shortness of breath. The doctor reported that tobacco smoke aggravated her asthma symptoms. With Ms. Igartua, there was no medical diagnosis of any condition that involved shortness of breath: there was simply the self-diagnosis that smoking caused her symptoms, which included some difficulty in breathing.
This case is more similar to another MCAD case that was not cited by the parties. In Ryan v. Springfield Housing Authority, 14 MDLR 1134 (1992), the plaintiff alleged that she was a qualified handicapped person within the meaning of G.L.c. 151B because of her physical intolerance to cigarette smoke. Although the plaintiff testified that secondary smoke left her with a headache and nausea, and although her doctor wrote a letter stating that it would be detrimental to her health for her to be exposed to cigarette smoke, she presented no medical evidence that she suffered from any physical condition (like asthma) or that she was even allergic to cigarette smoke. The MCAD Commissioner wrote, “While I am sympathetic to Ms. Ryan’s desire to work in a smoke-free environment, the Commission Against Discrimination is not the forum in which this workplace issue should properly be adjudicated.” Id. at 1141. The Commissioner found that the plaintiffs sensitivity to smoke did not rise to the level of a “handicap” as defined under G.L.c. 15 IB. The Commissioner cited with approval the words of the North Carolina Court of Appeals when it grappled with this same issue: “It is manifestly clear that the legislature did not intend to include within the meaning of ‘handicapped persons’ those people with ‘any pulmonary problem’ however minor, or all people who are harmed or irritated by cigarette smoke."Id. at 1141-42 quoting GASP v. Mecklenburg County, 256 S.E.2d 477 (N.C.App. 1979).
It is one thing to say that a medical diagnosis of severe asthma or other respiratory illness aggravated by secondary smoke may allow one to be a qualified handicapped person. It is quite another to say that a self-diagnosis of smoke sensitivity may allow one to enjoy the legal protections triggered by such a classification. There may indeed be circumstances where an acute allergy to smoke may constitute an impairment that substantially limits one’s breathing, but those circumstances have not been shown on this record. The motion for partial summary judgment, therefore, is ALLOWED as to that part of Count IV that alleges handicap discrimination.[4]
ORDER
For the reasons stated above, the defendant City of Newton’s motion for partial summary judgment is *191 DENIED as to Count III (national origin discrimination) and ALLOWED as to that part of Count IV which alleges handicap discrimination.

 Actually, both of these counts are called Count III in the complaint, but the handicap discrimination claim is the fourth count in the complaint.

Count IV also alleges that the City retaliated against her, in violation of G.L.c. 151B, for her complaints about handicap discrimination. The City does not seek summary judgment against her for any retaliation claim and, if it did, its motion would be denied. The fact that summary judgment is appropriate on the handicap discrimination claim does not mean that summary judgment is required or appropriate on the claim of retaliation. G.L.c. 151B, §4(4) makes it illegal for any employer to discriminate against any person because she has opposed any discriminatory practice or filed a discrimination complaint. A finding of liability on a retaliation claim is not conditioned on a finding of liability on the underlying claim of discrimination. See, e.g., Bain v. Springfield, 424 Mass. 758 (1997).

The plaintiff seeks relief only under G.L.c. 15 IB; no relief is sought under the Americans with Disabilities Act (''ADA”), 42 U.S.C. §12201 et seq.

As declared earlier, the grant of summary judgment on the claim of handicap discrimination does not bar the plaintiff from proceeding on her claim of retaliation for her complaints of handicap discrimination under G.L.c. 151B, §4(4).