Troy, Paul E., J.
Plaintiffs Helen Brown (“Brown”) and Crystal Young (“Young”), sued the defendant Office of the Commissioner of Probation (“Probation”) for gender discrimination and retaliation pursuant to G.L.c. 151B, §4. Following trial, the jury determined that Probation had not violated Young’s rights under the statute and found for Probation on all of her claims. The jury also found for Probation on Brown’s discrimination claim. It did, however, find in favor of Brown on the retaliation count, awarding her $6,000 in compensatory damages and $500,000 in punitive damages. Probation has moved for remittitur, while Brown has cross moved for additur. For the following reasons, Probation’s Motion is ALLOWED, and Brown’s Motion is DENIED.
BACKGROUND
Brown was hired by Probation in 1993 and became an Assistant Chief Probation Officer in 1998, working in the West Roxbury District Court. Brown had a contentious relationship with her direct superior, Chief Probation Officer James Rush (“Rush”). Brown and her co-worker, Young, believed that Rush’s conduct amounted to gender discrimination (although the jury later concluded that it did not), and filed suit against both him and Probation on August 13, 2007. She also filed an internal complaint and complaints with the Office of Affirmative Action and the Massachusetts Commission Against Discrimination. Officer Mira Dandridge was assigned by Probation to investigate the internal claim. Dandridge failed to complete a report into Brown’s claim.
The case did not come to trial for several years. Rush had retired in 2006 and had been replaced as Chief Probation Officer in West Roxbury by Mark Prisco (“Prisco”), who became Brown’s direct supervisor. At the naming of the West Roxbury District Court’s rotunda for Rush, Prisco permitted Probation officers to place photos of Rush around the court rotunda and to put up fliers celebrating the event.
Brown was reprimanded by Prisco on a number of occasions following her complaints regarding discrimination. One of Brown’s duties was to make periodic bank deposits of funds into the Probation Office’s account. In 2008, Prisco learned that Brown would sometimes go home after making the deposits without returning to work for the rest of the day. Shortly thereafter, Prisco directed that other probation employees should also make the deposits, stripping Brown of the exclusive responsibility for them.
In 2009 one of Brown’s subordinate probation officers had transferred a probationer from the supervision of the West Roxbury District Court to the Stoughton District Court. Following the transfer, it emerged that the Stoughton probation office did not have a record of the probationer and had not been monitoring him for a number of months. As a result of this incident, Prisco berated Brown, and, with the consent of Mark McHale, the regional probation administrator, placed a written reprimand in her file. He also ordered Brown to conduct a complete caseload review, although he never went over the review with her. Prisco also admonished Brown when a warrant issued for the arrest of a presumably non-compliant probationer who was under the charge of one of Brown’s subordinate probation officers. As it turned out, the probationer had died a full year before the warrant issued, leading to an awkward encounter between police and the probationer’s family.
Finally, in October 2009, a group of thirteen probation officers signed a letter to Prisco complaining about Brown’s conduct, including her abrasive manner, unkempt files, and lackadaisical approach to her job. After receiving the letter, Prisco called Brown into his office and embarrassed her by reading the letter to her aloud in the presence of two other probation supervisors. He also declined to give her a copy of the letter. Prisco then removed Brown’s supervisory responsibilities over other probation officers. Her job title and salary remained the same, however. When Prisco later restored Brown’s supervisory responsibilities, he refused to place any officers who had signed the letter about Brown under her supervision.
*550 DISCUSSION
When a court grants remittitur, the plaintiff is given the option of either accepting a new trial or accepting the amount of damages that the court considers fair. Mass. Prac. Vol. 43 §23.28; see Mass.R.Civ.P. 59(a). It is appropriate if “ ‘the court adjudges [that damages are] excessive,’ in order to bring the award within the range of verdicts supported by the evidence.” Clifton v. Massachusetts Bay Transportation Auth., 445 Mass. 611, 623 (2005). A judge’s decision to allow or deny a motion for remittitur is reviewed according to the “abuse of discretion” standard. Blake v. Commissioner of Correction, 403 Mass. 764, 770 n.6 (1989).
Punitive and compensatory damages fulfill different roles in the judicial process. Compensatory damages make a plaintiff whole for the actual harm he or she has suffered. By contrast, punitive damages serve to punish the defendant for wrongdoing and deter similar conduct. Accordingly, in discrimination/retaliation cases, it is not enough for the plaintiff to prove that the defendant violated G.L.c. 15IB, §4; the plaintiff must additionally prove that the defendant’s conduct was “outrageous or egregious.” Haddad v. Wal-Mart Stores, Inc., 455 Mass. 91, 110 (2009).
Just as the legal standard for resolving whether a plaintiff is entitled to compensatory damages differs from the legal standard regarding punitive damages, there are particular factors that the courts evaluate when considering whether a punitive damage award was excessive. See Labonte v. Hutchins & Wheeler, 424 Mass. 813, 826 (“Common law and constitutional principles mandate that courts review the amount to ensure that it is reasonable and not simply a criminal penalty”). As the court noted in Labonte, typically these factors guide a judge’s decision both under the Due Process Clause of the Fourteenth Amendment and the judge’s common-law powers.
In many cases, it is the constitutional standard that is the more important, as the Supreme Court has held that a punitive damages award that exceeds a “single digit ratio” (i.e., a ratio of nine or more to one) to the award of compensatoiy damages is highly constitutionally suspect as a possible violation of the constitution’s Due Process Clause. State Farm Mut. Auto Ins. Co. v. Campbell, 538 U.S. 408, 425 (2003). The Commonwealth argues that remittitur should therefore be granted to reduce the eighty-three to one awarded by the jury to the nine to one described by the Supreme Court. As the defense points out, however “The Fourteenth Amendment protects persons against exercises of State power; it has never been applied and its text would hardly permit that it be so applied to protect the state or its political subdivisions against persons.” Bain v. City of Springfield, 424 Mass. 758, 768 (1997). Therefore, application of the Amendment does not have a role in this case, and the nine to one ratio is not mandated on this court.[2]
This still leaves the court’s duty to “scrutinize punitive damage awards against the Commonwealth to assure that they are not excessive or irrational,” and this court will thus evaluate the punitive damages the award in this case in light of the factors described in the Supreme Court’s jurisprudence. Id. These factors are “the degree of reprehensibiliiy of the defendant’s conduct,” the ratio of the punitive damage award to the “actual harm inflicted on the plaintiff,” and a comparison of “the punitive damages award and the civil or criminal penalties that could be imposed for comparable misconduct.” Labonte, 424 Mass. at 826-27, citing BMW of N. Am. v. Gore, 116 S.Ct. 1589, 1599, 1601, 1603 (1996).
A. Sufficiency of the Evidence for Punitive Damages
The Commonwealth argues that punitive damages are inappropriate because there is no evidence of reckless or intentional retaliatoiy conduct on the part of any probation officers. Read differently, the Commonwealth challenges the sufficiency of the evidence altogether, since the jury could not have found in Brown’s favor on the retaliation claim without proof that Probation would not have taken action against her but for her complaints of discrimination. The Commonwealth points out that there was no testimony to controvert Prisco’s contention on the stand that there were non-retaliatoiy reasons for the actions he took against Brown.
This is a close case. The inference that the jury must have drawn—which is that the actions taken against Brown were at least in part a product of her discrimination complaints—rests on tenuous ground. See MacCormack v. Boston Edison Co., 423 Mass. 652, 663 n.11 (1996) (“[M]ere fact that one event followed another" is insufficient to prove a case of retaliation”). That said, issues of credibility are generally ones reserved for the juiy, and the juiy determined that the actions of Rush and/or Prisco after Brown filed her discrimination claims were retaliatoiy and not based solely on her performance. Based upon the trial record, the court denied the Commonwealth’s motion for a judgment n.o.v. and accepted the jury’s finding of retaliation. It will likewise accept the juiy’s clear determination that Probation’s retaliation against Brown was reckless or intentional and that this retaliation constituted the sort of outrageous conduct that would justify the award of punitive damages.
B. Amount of Punitive Damages
This leaves the question of whether a reduction in the amount of the jury’s award of punitive damages is warranted under common-law rules. The first factor to be considered, the reprehensibiliiy of the defendant’s conduct, militates towards a reduction in the punitive damage verdict. The evidence, if viewed *551 in the light most favorable to Brown, includes that Probation, through its agents: embarrassed Brown by glorifying Rush; temporarily assigned her to front counter duty; temporarily removed her supervisory responsibilities; removed her sole right to make bank deposits; humiliated her by having a critical letter read out loud; scheduled a disciplinary hearing just before the trial; required her to use comp time to attend the trial; and subjected her to rude and demeaning reprimands without cause. While the court will accept the jury’s verdict that these actions constituted retaliation and amounted to outrageous behavior, the retaliation is still significantly less reprehensible than the conduct in other situations where lesser punitive damages have been awarded. See Bain, 424 Mass. at 759-60 (competent employee fired following gender discrimination complaint); Dalrymple v. Winthrop, 50 Mass.App.Ct. 611, 612, 621 (2000) (female police officer subject to discrimination, including being told to “get out” if she did not like screening of films with sexually explicit material). Prisco or Rush’s retaliatory actions fall into a wholly different category of wrongdoing. Most notably, Brown retained her job, her title, and salary.
The court now turns to the second factor. Although punitive damages should not ordinarily exceed nine times the award of compensatory damages, the jury’s punitive damages award amounts to over eighty-three times its award of compensatory damages. Because “(t]he same considerations that require scrutiny and control by the judge ... to meet the requirements of due process apply” to the common-law reasonableness test, Bain, 424 Mass. at 769 (internal citations omitted), the single-digit ratio described in State Farm serves as a guidepost in this court’s evaluation of the reasonableness of the jury’s punitive damages award. The huge disparity here—$500,000 versus $6,000 for retaliation and no award for discrimination—argues in favor of granting the motion.
As to the third factor, the parties do not raise any potential criminal or civil penalties to which either Rush or Prisco might be subjected as a result of their conduct. Nor is the court aware of any such penalties that might reasonably arise from such conduct. Compare Ciccarelli, 70 Mass.App.Ct. 787, 798-99 (2007) ($50,000 punitive damage award against defendant who had engaged in witness intimidation, which is a felony punishable by up to ten years’ imprisonment). As such, the third factor favors re-mittitur.
Based on the applicable factors, and especially considering the amount of the jury’s compensatory damage award of just $6,000, I conclude that the jury’s punitive damages award was not justified. Although a reduction in punitive damages to a single-digit ratio is not constitutionally required, I believe that a significant reduction is necessary in order to render the verdict consistent with the jury’s compensatory damage award, which reflected the injury proven at trial. As such, the court will remit the punitive damages to eighteen times the compensatory damage award, or $108,000. This ratio is twice the level that would likely be constitutional if the defendant were a private party. I believe that it adequately acknowledges the jury’s evident conviction that the actions of Probation’s employees were extreme and worthy of deterrence.
C. Amount of Compensatory Damages
Brown asks this court to add to its compensatory damages if it decides to remit her punitive damages, in order to preserve the total amount of the jury’s verdict. But additur, like remittitur, should only be granted if the jury’s award of damages cannot be supported by any reasonable view of the evidence. In this case, the jury was presented with a number of different episodes from which it could have concluded that Probation employees engaged in unlawful retaliation against Brown. It may have reasonably concluded that some, or just one, were in fact the product of retaliation and the rest were not. As such, the award of $6,000 in compensatory damages was amply justified.
Moreover, Brown’s motion ignores the fact that the two verdicts for compensatory and punitive damages are not interchangeable. Compensatory damages exist to compensate Brown for the actual harm she suffered as a result of the retaliation the jury found that she faced. Punitive damages exist to punish Probation for what the jury determined to be the reckless or intentional retaliation of its employees. It is presumed that the jury followed the court’s instructions, Commonwealth v. Taylor, 455 Mass. 372, 386 (2009), and consequently this court presumes that the jury did not arbitrarily divide a half-million dollar total verdict between the compensatory and punitive damage categories, as Brown implies.
ORDER
Probation’s Motion for Remittitur is ALLOWED. Brown may elect either to accept a judgment of $6,000 in compensatory damages and $108,000 in punitive damages, or retry the case. Brown’s Motion for Additur is DENIED.

It should be noted that even if the Due Process Clause did apply to this action, the single digit ratio is not entirely determinative of whether a punitive damages award violates the Fourteenth Amendment. See State Farm, 538 U.S. at 425.