ELIOT LEVY vs. RICHARD BENDETSON.

Suffolk.    April 14, 1978. — August 23, 1978.

Present: KEVILLE, GOODMAN & BROWN, JJ.

*Practice, Civil,* Appeal. *Sale,* Rescission, Real estate. *Contract,* Rescission, Sale of real estate. *Deceit. Damages,* On rescission. *Consumer Protection Act.*

Where a clerk failed to set forth on a separate document a judgment as required by Rule 58(a) of the Massachusetts Rules of Civil Procedure, an appeal from the judgment was dismissed. [560–561]

In an action to rescind an agreement for the purchase and sale of an apartment building, the judge's finding that the amount of "electric and heat" expense set out in a statement prepared by the broker acting for the owner constituted a material misrepresentation on which the purchaser relied in buying the building was not clearly erroneous and warranted rescission of the agreement. [562–565]

In an action to rescind an agreement for the purchase and sale of an apartment building, the judge's refusal to grant rescission was not justified by his conclusion that restoration of the status quo was not feasible. [565–566]

Where a plaintiff was not granted any relief in his action under G. L. c. 93A, § 11, he was not entitled to an award of attorneys' fees under that section. [566–567]

CONTRACT. Writ in the Superior Court dated December 28, 1972.

The action was heard by *Sullivan,* J.

*Michael M. Bronstein* for the defendant.

*Ira D. Feinberg* for the plaintiff.

GOODMAN, J. This case arises out of the sale of an apartment building in Hyde Park by the plaintiff Eliot Levy to the defendant Richard Bendetson. The sale occurred on June 8, 1972; the purchase price was approximately $320,000. Bendetson paid $6,000 in cash; the remainder was financed by three mortgages, including a purchase

money mortgage of $47,883.36 to Levy. About six weeks after the sale Bendetson discontinued his operation of the building, stopped making the payments due on the mortgages, and notified Levy by letter dated July 20, 1972, that he was rescinding the transaction. Levy thereupon reentered the property in late July and commenced foreclosure proceedings on the mortgage which Bendetson had given him as part of the purchase price. A foreclosure sale was held in November, 1972, at which Levy purchased the building for $2,000, subject to the prior mortgages. Subsequently, on December 28, 1972, Levy brought an action for a deficiency in the amount of $48,586.54 on the mortgage note. Bendetson's answer to the plaintiff's declaration was a general denial, and he further alleged, as a defense, that Levy had misrepresented the expenses of operating the building.

Subsequently, Bendetson by leave of court filed a counterclaim alleging misrepresentations by Levy and by Davis & Davis Realty, Inc. (Davis & Davis), the broker in the transaction, and demanding rescission of the sale, including the cancellation and return of the note. In a separate count Bendetson pleaded an action under G. L. c. 93A, § 11, alleging that misrepresentations made by Levy in the course of the negotiations constituted unfair and deceptive practices proscribed by G. L. c. 93A, § 2.

The case was heard by a judge who made "Findings of Fact and Rulings of Law." He found that Bendetson had relied on misrepresentations contained in a statement of income and expenses for the property furnished by Davis & Davis and authorized by Levy and that Bendetson was therefore entitled to rescind the transaction. The judge further held that these misrepresentations constituted unfair and deceptive practices under G. L. c. 93A, § 2, and that Bendetson could invoke G. L. c. 93A, § 11 (enacted after the sale; see St. 1972, c. 614, § 2, approved July 9, 1972, and effective ninety days thereafter), retroactively to obtain relief for a violation of c. 93A, § 2. However, since he found that Bendetson was entitled to rescission

for misrepresentation, he did not order relief under c. 93A, though he held that Bendetson was entitled to recover attorneys' fees incurred in prosecuting that claim. Finally, he ordered a further hearing "[t]o disentangle Bendetson from his misadventure without unfairly prejudicing the rights of Levy or mortgagees not joined as parties." He requested that the parties file affidavits prior to the hearing and stated that "[t]he court will be particularly concerned with the manner in which relief granted may affect the rights of persons not made parties to this action."

After that hearing the judge issued "Supplementary Findings of Fact and Rulings of Law and Order for Entry of Judgment" in which he refused to grant rescission. As we read the supplementary findings he adhered to his original conclusion that (as stated in the supplementary findings), "because Levy had made innocent misrepresentations relating to 624 Hyde Park Avenue, Bendetson was entitled to rescind his purchase agreement with Levy." However, he concluded that "[t]he events that have transpired since Levy sold this property to Bendetson have changed the circumstances of the parties and involved innocent strangers to this action in such a fashion as to make rescission an infeasible if not an inequitable result" (footnote omitted). He therefore ruled that Levy was entitled to recover on the note. Upon further consideration of Bendetson's counterclaim under G. L. c. 93A, the judge found that Bendetson had failed to show damages arising out of Levy's misrepresentations but that the mere proof of the misrepresentations was sufficient to entitle Bendetson to attorneys' fees, which he then awarded in the amount of $3,493.12, to be deducted from Levy's recovery.

He ordered at the end of his "Supplementary Findings of Fact and Rulings of Law, and Order for Entry of Judgment" that "[j]udgment shall be entered accordingly," and the clerk made the docket entry set out in the margin.[1] This, however, is not sufficient compliance with

[1] "Supplementary Findings of Fact and Rulings of Law Sullivan, J. Notice sent 8/20/76. AND JUDGMENT: THE Court finds that $3,-

Mass.R.Civ.P. 58(a), 365 Mass. 826 (1974). That rule provided that: "Every judgment shall be set forth on a separate document. A judgment is effective only when so set forth and when entered as provided in Rule 79(a)."[2] Both these conditions must be met if a "judgment" is to provide a basis for an appeal. *United States* v. *Indrelunas*, 411 U.S. 216 (1973). Smith & Zobel, Rules Practice §§ 58.5, 58.6 (1977). And this is so whether the judgment is entered directly by the clerk under clause (1) of Rule 58(a)[3] or upon approval by the court under clause (2). See also Mass.R.A.P. 18(a), 365 Mass. 864 (1974): "The appellant shall prepare and file an appendix to the briefs which shall contain: ... (3) the judgment ... in question." The record contains no such document and therefore no effective judgment. Accordingly, the appeal must be dismissed.

Heretofore we have proceeded to state our views by way of dictum rather than dismiss the appeal without more and leave the appellant to appeal again after he has arranged for the entry of a proper judgment in the lower court. Thus we have considered the merits in *Nantucket Land Council, Inc.* v. *Planning Bd. of Nantucket*, 5 Mass. App. Ct. 206, 207–208 (1977), *Tisei* v. *Building Inspector of Marlborough*, 5 Mass. App. Ct. 328, 330 (1977),

---

493.12, on half of Bendetson's reasonable costs and attorneys' fees, was expended in relation to Bendetson's claim for relief under G. L. Ch. 93A, § 11. This amount shall therefore be deducted from Levy's recovery of $46,455.86 plus interest: entered on Docket pursuant to the provisions of Mass.R.Civ.P. 58(a) and notice sent to parties pursuant to the provisions of Mass.R.Civ.P. 77(d)."

[2] An amendment to this rule, effective January 1, 1977, 371 Mass. 908 (1976), added certain qualifications but made no change in the requirement for a "separate document" in circumstances relevant to this case.

[3] Clause (1) provides that in a case such as this where no contrary direction has been given by the judge "(1) ... upon a decision by the court that a party shall recover only a sum certain or costs ... the clerk ... shall forthwith prepare, sign and enter judgment without awaiting any direction by the court."

*Capodilupo* v. *Petringa*, 5 Mass. App. Ct. 893, 894 (1977), and *Swift & Co.* v. *Superior Pet Products, Inc.*, 5 Mass. App. Ct. 904 (1977), in which the clerk also failed to comply with the clause designated as (1) of Rule 58(a). We shall also do so in this case, but we are not inclined to make this a uniform practice since it would undermine the rule.

On the merits we are of the opinion (1) that the judge was not clearly wrong in finding misrepresentation by Levy and Davis & Davis which warranted rescission but (2) that the record in this case indicates no justification for the judge's conclusion that rescission is "infeasible if not inequitable." We also are of the opinion (3) that Bendetson is not entitled to attorneys' fees under G. L. c. 93A, § 11.

1. *The misrepresentation.* The judge found that the "electric and heat"[4] expense in the amount of $4,000 set out in the statement prepared by Davis & Davis constituted a material misrepresentation on which Bendetson relied in buying the building. The statement was — the judge found — prepared by "Davis & Davis, acting as broker for Levy in an effort to procure a buyer . . ., [and] Levy authorized preparation of the statement on his behalf, and supplied information used by Davis & Davis in drafting the statement." Further, "[d]uring the course of the negotiations, Levy became aware of the contents of the statement." Our examination of the evidence leaves us unable to conclude that the findings above are clearly erroneous.

It is true, as Levy points out, that the statement contained a number of inaccuracies which, the judge found, Bendetson discovered, or can be assumed to have discovered, in the course of the negotiations and that the financing arrangements and price set out in the statement were obviously only suggested and subject to negotiation. However, the figure for "electric and heat" was never changed

---

[4] The building was heated by electricity.

during the course of the negotiations, and Bendetson and Nelson, an employee of Davis & Davis, testified that they had used the statement as a basis for determining the practicality of the investment. Bendetson further testified that at the first meeting Levy "acknowledged . . . that these [the expenses on the statement] were the expenses incurred by him in running the property." From this testimony the judge could have inferred, as he did, that the $4,000 figure purported to represent Levy's recent experience with the building with respect to "electric and heat" expense. The judge was not clearly wrong in regarding the "electric and heat" figure as something different from "statements of opinion, of conditions to exist in the future, or of matters promissory in nature." *McMahon* v. *M & D Builders, Inc.*, 360 Mass. 54, 58 (1971). See *Thomson* v. *Pentecost*, 206 Mass. 505, 512 (1910); Annot., 27 A.L.R. 2d 14, § 4 (1953). Nor can it be said that the judge was clearly wrong (though it is a close question) in finding in effect that despite the other shortcomings of the statement they did not render the figure for "electric and heat" expense so "palpably false" that Bendetson could not have taken it seriously. *Yorke* v. *Taylor*, 332 Mass. 368, 374 (1955). Restatement (Second) of Torts § 541 (1977). Measured against the actual cost for 1971, the most recent full year, the "electric and heat" expense was understated by about $1,400. Indeed, it could be inferred that Levy was aware of the understatement from the evidence that he gave statements to two other brokers setting out that expense as $5,000, a closer approximation to 1971 costs.

While the misrepresented expense appears to be small in comparison to the purchase price, it cannot be said that the judge was clearly wrong in his explicit finding that it was material to the transaction, a contributing factor in inducing Bendetson to purchase the building. *Sandler* v. *Elliot*, 335 Mass. 576, 580 (1957). *Sheffer* v. *Rudnick*, 291 Mass. 205, 210 (1935). *Golding* v. *108 Longwood Avenue, Inc.*, 325 Mass. 465, 468 (1950). Bendetson testified as to

his reliance, see *Sheffer* v. *Rudnick*, 291 Mass. at 210–211, and Bendetson's small equity investment and the consequent large mortgage payments justified the judge's findings that "[i]t was critical to the success of Bendetson's venture that he maintain a constant flow of income from apartment rentals capable of meeting current operating expenses and mortgage payments. Underestimation of current expenses causing a temporary net loss could cause an abrupt and financially damaging end to Bendetson's investment plans, since he had no apparent additional sources of capital or credit."[5] Bendetson was vitally concerned to minimize costs.[6] Compare *Rykiel* v. *Sklaver*, 259 Mass. 608, 610–611 (1927), in which an overstatement of the rental income of some $1,200 from an apartment building for the first year only (unlike the recurring "electric and heat" expense in this case) was held sufficient to warrant rescission of the sale. See also *Yorke* v. *Taylor*, 332 Mass. at 371–372; Annot., 27 A.L.R. 2d 14, § 3 (1953).

We think the judge's findings bring this case within the rule stated in *McMahon* v. *M & D Builders, Inc.*, 360 Mass. at 58, in which the court, quoting from the *Yorke* case, said, "In this Commonwealth one who has been induced to enter into a contract in reliance upon the false though innocent representation of a material fact susceptible of knowledge which was made as of the party's own knowledge and was stated as a fact and not as a matter of opinion is entitled to rescission." See *Bellefeuille* v. *Medeiros*, 335 Mass. 262, 265 (1957); *Kannavos* v. *Annino*,

---

[5] Bendetson's cash resources of about $8,500 were substantially consumed in the payment of $6,000 to Levy as part of the purchase price and payment of almost $2,000 in mortgage interest and attorneys' fees at the closing.

[6] Bendetson testified that, "[a]t the first meeting we had in Mr. Levy's office, it was made very clear with Donald Nelson and myself that I would work in the building, live there, do all the work myself. . . . I didn't have to hire anybody for anything and I'd make money at it."

356 Mass. 42, 50 (1969). See also *Snyder* v. *Sperry &
Hutchinson Co.*, 368 Mass. 433, 444 (1975) (recovery al-
lowed for innocent misrepresentations in action for de-
ceit). Contrast *Lolos* v. *Berlin*, 338 Mass. 10, 14 (1958).

2. *Rescission.* The judge's refusal to grant rescission
seems ultimately to be based on his conclusion that "the
court is unable to restore the parties to their original
position." As he points out, such restoration is indeed not
feasible. After Levy reentered the property on July 27,
1972, he foreclosed his purchase money mortgage and
subsequently resold the property (subject to the existing
two mortgages) to another buyer from whom Levy re-
ceived another purchase money mortgage. Subsequently
the two prior mortgages were foreclosed and Levy's mort-
gage was extinguished. (Levy is pursuing his rights
against the second buyer on his mortgage note to Levy.)

However, this is not a case (as in actions at law prior
to the new rules) in which only the repayment of money
is sought in a proceeding in which the court can give no
other remedy. In such a case a tender and restoration
would have been necessary if the party entitled to a judg-
ment for the payments he had made was not to be left
with the property he had received as well and thereby
unjustly enriched. See *Thomas* v. *Beals*, 154 Mass. 51, 54
(1891); *Owen* v. *Button*, 210 Mass. 219, 222 (1911); *Cum-
mings* v. *Hotchkin Co.*, 292 Mass. 78, 82 (1935); 5 Corbin,
Contracts § 1116, see generally § 1103 (1964). In this case,
where Bendetson is seeking to have the purchase and sale
agreement cancelled and the note returned to him, we see
nothing, at least in the record before us, which would
preclude the Superior Court Department from exercising
its equitable powers to impose conditions on the grant of
relief to Bendetson and fashion a remedy which will be
fair to Levy in the circumstances. "It is not an essential
for a suit in equity for the rescission of a contract . . . to
offer to restore that which has been received and to put
the parties *in statu quo.*" *J. C. Penney Co.* v. *Schulte Real
Estate Co.*, 292 Mass. 42, 45 (1935).

Thus in *Limoli* v. *Accettullo*, 358 Mass. 381 (1970), the buyer of a building and business seeking rescission was granted much the same relief as is requested in this case. The seller was ordered to cancel a note and the second mortgage given by the buyer to the seller and to return the cash portion of the purchase price. The seller, however, was credited with the reasonable value of the buyer's use of the real estate and the chattels he had bought. The court granted relief although a first mortgage on the real estate which the buyer had placed in financing the purchase (like the first two mortgages by which Bendetson had financed his purchase) had been foreclosed so that the real estate could not be restored. Further, the chattels purchased as part of the business had, as the court pointed out, been repossessed by the seller — like Levy's entry and foreclosure of his purchase money mortgage in this case. See 3 Black, Rescission of Contracts § 617a, at 1496 (2d ed. 1929). Other cases in which rescission has been granted though restoration of the status quo was not feasible are *Rudnick* v. *Rudnick*, 281 Mass. 205, 208 (1932); *J. C. Penney Co.* v. *Schulte Real Estate Co.*, 292 Mass. at 45–46; *Bellefeuille* v. *Medeiros*, 335 Mass. at 266–267; *Lyons* v. *Rainbow Recording Corp.*, 1 Mass. App. Ct. 783, 786 (1974). See also Restatement of Contracts § 481 (1932). Similarly in this case we see no apparent obstacle to cancellation of the note and an accounting which will do justice to both parties.

3. *Attorneys' fees.* The judge held that Bendetson had been "unable to show 'any loss of money or property, real or personal, as a result of . . . an unfair or deceptive act' " under G. L. c. 93A, § 11 — pursuant to which Bendetson sought relief as an alternative to rescission. See *Baldassari* v. *Public Finance Trust*, 369 Mass. 33, 44–46 (1975). However, the judge awarded attorneys' fees to Bendetson in pressing this claim. We see no justification for such an award in a case in which no relief has been granted under that section to any party either by way of damages or injunction or otherwise. General Laws c. 93A, § 11 (fifth

paragraph), provides that attorneys' fees and costs shall be awarded "in addition to other relief provided for by this section." Such "other relief" is provided in the preceding paragraph only "[i]f the court finds for the petitioner." Where, as here, a single plaintiff is seeking damages as an individual on his own behalf and has been denied any relief under § 11, it would indeed be anomalous to grant him attorneys' fees under that section. Compare generally *Nadeau* v. *Helgemoe*, 581 F.2d 275, 278–280 (1st Cir. 1978). (We need not deal with questions of retroactivity or any other matters touching on the applicability of § 11.)

Accordingly, the appeal is dismissed and the case is remanded to the Superior Court Department for further proceedings not inconsistent with this opinion. Costs of appeal are not to be awarded to either party.

*So ordered.*