## DEBORAH KIELY *vs.* TERADYNE, INC.

Nos. 13-P-505 & 13-P-1217.

Suffolk. March 7, 2014. - June 6, 2014.

Present: KAFKER, FECTEAU, & AGNES, JJ.

*Anti-Discrimination Law,* Employment, Sex, Damages, Attorney's fees. *Employment,* Discrimination, Retaliation. *Damages,* Under anti-discrimination law, Attorney's fees. *Practice, Civil,* Judgment notwithstanding verdict, Instructions to jury.

In an employment discrimination action in which the jury found in favor of the plaintiff on her retaliation claim but declined to award any compensatory damages, the trial judge did not err in allowing the defendant's postjudgment motion to vacate the jury's award of punitive damages, where the judge thoroughly addressed the relevant factors and correctly concluded that the evidence, viewed most favorably to the plaintiff, did not show conduct by the defendant that was so outrageous or egregious as to warrant public condemnation and punishment [434-441]; further, in these circumstances, the judge correctly denied the plaintiff's postjudgment motion for attorney's fees under G. L. c. 151B, § 9, where a finding of retaliation alone, unaccompanied by any form of relief or recovery, could not support an award of attorney's fees under that statute [442-448].

In a civil action alleging claims of gender discrimination and retaliation in employment arising from the defendant's decision not to rehire the plaintiff, there was no error in the judge's decision not to give a separate instruction regarding the defendant's termination of the plaintiff's employment, where the plaintiff did not allege, and the evidence did not support, a claim that her termination, by itself, was discriminatory [441-442]; likewise, the judge's decision to not instruct the jury regarding the plaintiff's statistical evidence was soundly within her discretion and consistent with the record evidence [442].

In a civil action alleging, inter alia, a claim of retaliation in employment arising from the defendant's decision not to rehire the plaintiff, the trial judge did not err in denying the defendant's motion for judgment notwithstanding the verdict, where the evidence, although not compelling, was sufficient to retain the plaintiff's verdict. [442]

CIVIL ACTION commenced in the Superior Court Department on December 30, 2008.

The case was tried before *Geraldine S. Hines*, J., and motions for judgment notwithstanding the verdict and for attorney's fees were heard by her.

*Emma Marion Quinn-Judge* for the plaintiff.

*Jonathan D. Rosenfeld* for the defendant.

*James A.W. Shaw*, for National Employment Lawyers Association & others, amici curiae, submitted a brief.

FECTEAU, J. These two separately docketed appeals arise from the same underlying case, namely, claims brought by the plaintiff Deborah Kiely against the defendant, Teradyne, Inc. (Teradyne), for gender discrimination and retaliation. After an eight-day trial, the jury found for Teradyne on Kiely's discrimination claim and for Kiely on her retaliation claim; although Kiely failed to obtain any award of compensatory damages from the jury, they did award her $1.1 million in punitive damages. Acting upon Teradyne's timely postjudgment motion under Mass.R. Civ.P. 50(b), as amended, 428 Mass. 1402 (1998), the trial judge denied Teradyne's request for full judgment notwithstanding the verdict (judgment n.o.v.) but allowed its alternative request to vacate, in its entirety, the jury's award of punitive damages. The judge also denied Kiely's motion for attorney's fees under G. L. c. 151B, § 9, as she was not a "prevailing party."

Case No. 13-P-505 concerns Kiely's appeal from the modified judgment, in which she contends that her gender discrimination claim must be remanded for a new trial due to the trial judge's failure to give certain jury instructions and that the judge erred in vacating the award of punitive damages on the retaliation claim. In its cross appeal, Teradyne contends that the judge erred in denying its motion for judgment n.o.v. as to Kiely's retaliation claim. We discern no error in the trial judge's jury instructions, her decision to vacate the jury's award of punitive damages, or her denial of the defendant's motion for judgment n.o.v.

In No. 13-P-1217, Kiely contends separately that the judge erred in denying her postjudgment motion for attorney's fees under G. L. c. 151B, § 9, even in the absence of compensatory or punitive damages. We disagree and affirm this order.

1. *Background.* Kiely worked at Teradyne from 1982 until

2006, primarily as a test technician in Teradyne's global customer services (GCS) department, which was responsible for repairing computer circuit boards returned to Teradyne from its customers around the world. In 2004, Kiely was promoted to group leader in the GCS repair group, a position that involved less repair work and more administrative duties.

Between 2000 and 2006, by a series of layoffs, Teradyne reduced the number of GCS test technicians from approximately thirty-one to three.[1] Kiely survived these layoffs until November 2, 2006, when the last group of three test technicians, Kiely, Dennis Hodgdon, and Steve Senecal, were told they would be laid off effective December 2, 2006. Kiely filed a gender discrimination charge before the Massachusetts Commission Against Discrimination (MCAD) on November 21, 2006, with notice being sent to Teradyne's general counsel's office and a human resources (HR) manager, Bill Burns.

Shortly after these layoffs, Teradyne's assembly test division (ATD), a different department from GCS where Kiely had been working, recognized a need for two test technicians to service a particular account. Jay Fitton, a manager in the ATD department, was designated to make the hiring decisions; he learned that Kiely, Hodgdon, and Senecal were the last three employees to have been let go from GCS and so he considered them for the two positions. Contrary to Teradyne's usual practice, none of the three was offered an interview or told that they were being considered for the newly available positions.

Burns, the HR manager, instructed Susan Blair, another HR manager, to tell Fitton to document the hiring decision.[2] This directive was also a departure from Teradyne's typical hiring practice. Fitton testified, without contradiction, that the HR

---

[1] These layoffs were part of a larger reduction in Teradyne's American workforce. Hal Pierce, a former manager at Teradyne, testified that he was hired to help the defendant transfer its repair operations overseas.

[2] Burns first described his wanting "to make sure that the managers that were involved in making the hiring decision were going to be making that hiring decision based on skills and the skill sets needed to fill the position and to document it" and that he wanted the hiring decision documented in writing "[i]n the event that we ever needed to review that circumstance, they would be well-documented, given the fact that I knew that an action had been taken against the company by Ms. Kiely."

department never explained the reasons why he was told to document the hiring process or that Kiely had filed a discrimination charge at the MCAD. Ultimately, the ATD department rehired Hodgdon, by December 6, 2006, and Senecal, by January 15, 2007. Fitton admitted that his inquiries concluded, as a practical matter, after learning of the technical skills of Hodgdon and Senecal, but that he had not learned of Kiely's. In a memorandum explaining his decision, Fitton stated he based his decision to rehire Hodgdon and Senecal on their superior qualifications as test technicians and on the fact that Kiely's most recent experience had been mostly administrative.

2. *Discussion.* a. *Punitive damages.* We first address Kiely's claim that the trial judge erred in allowing Teradyne's postjudgment motion to vacate the jury's award of punitive damages. When considering a defendant's motion for judgment n.o.v., "the evidence is viewed in the light most favorable to the plaintiff, and all evidence favorable to the [defendant] is disregarded." *Ciccarelli* v. *School Dept. of Lowell,* 70 Mass. App. Ct. 787, 791 (2007). The verdict must be sustained if "anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be drawn in favor of the plaintiff." *Haddad* v. *Wal-Mart Stores, Inc. (No. 1),* 455 Mass. 91, 94 n.5 (2009), quoting from *Boothby* v. *Texon, Inc.,* 414 Mass. 468, 470 (1993). Motions for judgment n.o.v. should be granted "cautiously and sparingly," Wright & Miller, Federal Practice & Procedure § 2524, at 248 (3d ed. 2008), and should be granted only if the trial judge is satisfied that the jury "failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law," *Turnpike Motors, Inc.* v. *Newbury Group, Inc.,* 413 Mass. 119, 127 (1992), quoting from *Robertson* v. *Gaston Snow & Ely Bartlett,* 404 Mass. 515, 520, cert. denied, 493 U.S. 894 (1989). However, a party cannot avoid entry of judgment n.o.v. if any essential element of her case rests on a "mere scintilla" of evidence. *Stapleton* v. *Macchi,* 401 Mass. 725, 728 (1988), quoting from *Hartmann* v. *Boston Herald-Traveler Corp.,* 323 Mass. 56, 59 (1948).

"Chapter 151B provides for the award of punitive damages

in appropriate cases. Such damages 'may be awarded for conduct that is outrageous, because of the defendant's evil motive or his reckless indifference to the rights of others.' " *Ciccarelli* v. *School Dept. of Lowell*, 70 Mass. App. Ct. at 795, quoting from *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, 427 Mass. 1, 17a (1998). "An award of punitive damages requires a determination of the defendant's intent or state of mind, determinations properly left to the jury, whose verdict should be sustained if it could 'reasonably have [been] arrived at . . . from any . . . evidence . . . presented.' " *Haddad* v. *Wal-Mart Stores, Inc. (No. 1)*, 455 Mass. at 107, quoting from *Dartt* v. *Browning-Ferris Indus., Inc. (Mass.)*, *supra* at 16. Nonetheless, "the award of punitive damages cannot be left to the unguided discretion of the jury." *Bain* v. *Springfield*, 424 Mass. 758, 769 (1997).

Such a review of punitive damages is essential given that they implicate constitutional principles. As the Supreme Judicial Court stated in *Aleo* v. *SLB Toys USA, Inc.*, 466 Mass. 398, 412-413 (2013) (citations omitted),

> "The due process clause of the Fourteenth Amendment to the United States Constitution . . . prohibits the imposition of a ' "grossly excessive" punishment' on a tortfeasor. 'Elementary notions of fairness enshrined in our constitutional jurisprudence dictate that a person receive fair notice not only of the conduct that will subject him to punishment, but also of the severity of the penalty that a State may impose.' "

Accordingly, "[t]o the extent an award is grossly excessive, it furthers no legitimate purpose and constitutes an arbitrary deprivation of property." *Id.* at 413, quoting from *State Farm Mut. Auto. Ins. Co.* v. *Campbell*, 538 U.S. 408, 417 (2003).

In *Haddad* v. *Wal-Mart Stores, Inc. (No. 1)*, 455 Mass. at 110-111 (*Haddad*), the Supreme Judicial Court articulated the standard for an award of punitive damages under G. L. c. 151B:

> "Punitive damages may be awarded only where the defendant's conduct is outrageous or egregious. Punitive damages are warranted where the conduct is so offensive that it justifies punishment and not merely compensation. In making an award of punitive damages, the fact finder

should determine that the award is needed to deter such behavior toward the class of which plaintiff is a member, or that the defendant's behavior is so egregious that it warrants public condemnation and punishment."

Whether a plaintiff has met this standard of "outrageous or egregious" conduct is to be measured by applying a number of nonexclusive factors set out in *Haddad, supra* at 111: (1) "whether there was a conscious or purposeful effort to demean or diminish the class of which the plaintiff is a part (or the plaintiff because he or she is a member of the class)"; (2) "whether the defendant was aware that the discriminatory conduct would likely cause serious harm, or recklessly disregarded the likelihood that serious harm would arise"; (3) "the actual harm to the plaintiff"; (4) "the defendant's conduct after learning that the initial conduct would likely cause harm"; and (5) "the duration of the wrongful conduct and any concealment of that conduct by the defendant."

In her memorandum, the trial judge thoroughly addressed the *Haddad* factors and concluded, correctly in our view, that the evidence, even viewed most favorably to Kiely, did not show conduct by Teradyne that was so outrageous or egregious as to warrant public condemnation and punishment.

As an initial matter, we reject Kiely's argument that a showing on a single *Haddad* factor is sufficient to support an award of punitive damages. Such a position directly conflicts with the settled principle that "mere liability" is insufficient to sustain an award for punitive damages. *Id.* at 110. If a single factor, like factor three, actual harm to the plaintiff, *id.* at 111, was sufficient to uphold such an award, then punitive damages could be awarded in virtually every discrimination case in which a jury awards some compensatory damages. We also note that the judge considered not giving an instruction on punitive damages as she doubted whether the evidence presented at trial supported such an award. However, in an abundance of caution, the trial judge reasoned the better course was to submit the question to the jury to avoid the possibility that a reversal would require another jury trial. The judge wisely waited until after the close of evidence, the verdict, and the parties' postverdict briefing to

correctly conclude upon further reflection that the award of punitive damages could not be sustained.[3]

As the judge noted, only one of the *Haddad* factors weighs in favor of Kiely. As to the first factor, the jury's rejection of Kiely's gender discrimination claim seriously undermines any suggestion that Teradyne's action in failing to rehire Kiely was part of a conscious or purposeful effort to demean females as a class (or to demean Kiely because of being female). Nevertheless, we note that the Supreme Judicial Court fashioned the *Haddad* standard "specifically for discrimination claims," 455 Mass. at 110, and therefore, this factor may be less relevant in a retaliation case such as this, where the question is whether Kiely was singled out for engaging in a protected activity, rather than being part of a protected class.

Second, the jury could reasonably have concluded that Teradyne was aware or should have known that not rehiring Kiely would inflict serious harm (the second *Haddad* factor). Teradyne was aware that Kiely was seeking reemployment, as she inquired about open positions at least three times. Kiely also had spent her entire technical career at Teradyne and was grandfathered into generous benefits.

Although factor two favors Kiely, importantly, the jury found no actual harm (the third *Haddad* factor) in that they awarded no compensatory damages.[4] See *Labonte* v. *Hutchins & Wheeler*, 424 Mass. 813, 827 (1997) ("Where, as here, there is no cap on punitive damages, a judge or an appellate court must scrutinize the relationship between actual damages and the award of punitive damages"). Contrary to Kiely's argument, there is nothing

---

[3]See *Smith* v. *Ariens Co.*, 375 Mass. 620, 627-628 (1978) ("[T]he better procedure in a case in which it is a close question whether the standard for granting a directed verdict is met is to allow the matter to go to the jury. If the judge then decides that the jury's verdict cannot stand, a motion for judgment notwithstanding the verdict may be allowed. . . . This procedure is more efficient than initially allowing a motion for a directed verdict. If the granting of the motion for judgment notwithstanding the verdict is found to be erroneous on appeal, the jury's verdict can be reinstated, while the erroneous granting of the motion for a directed verdict requires a new trial").

[4]While this factor is important to the analysis, we are careful not to overvalue it. See *Bain* v. *Springfield*, 424 Mass. at 767 ("[T]here is no requirement in our law that punitive damages may only be awarded if there is an award of compensatory damages").

in the record to suggest that the jury were confused about the damages that they could award and how they should apportion them. Kiely's contention that the jury may have folded damages for the harm she suffered into their award of punitive damages is mere speculation. The jury instructions clearly described and delineated the damages — compensatory and punitive — available for their consideration; moreover, the special verdict form differentiated between the separate forms of damages.

Most significant is the lack of evidence as to *Haddad* factors four and five in that there was no evidence at trial that the defendant took any adverse action against Kiely beyond the retaliation itself. Kiely asserts that the jury's apparent disbelief of Fitton's testimony that he was unaware of Kiely's MCAD complaint at the time he made the rehiring decision, which is the apparent basis for the retaliation verdict,[5] is also proof that Teradyne attempted to cover up its wrongdoing.

However, the fact that the jury drew an inference against Fitton does not equate with positive evidence that he lied or that Teradyne orchestrated a cover-up. Since there is no affirmative evidence, beyond this inference, that the defendant orchestrated a cover-up of its wrongdoing, or that there were other aggravating factors beyond the retaliation itself, the jury's award of punitive damages cannot stand. See, e.g., *Dalrymple* v. *Winthrop*, 50 Mass. App. Ct. 611, 621 (2000) (punitive damages warranted where defendant police chief who was "charged with the public duty to enforce the law equally [was] shown to have deliberately violated it for reprehensible reasons"); *Ciccarelli* v. *School Dept. of Lowell*, 70 Mass. App. Ct. at 796-797 (punitive damages upheld where there was affirmative evidence of attempted concealment of wrongdoing and where defendant had public duty to enforce law equally). This is especially true where, as mentioned above, the jury found no actual harm to Kiely. See *Aleo* v. *SLB Toys USA, Inc.*, 466 Mass. at 415, quoting from *BMW of N. America, Inc.* v. *Gore*, 517 U.S. 559,

---

[5]The judge clearly instructed the jury in connection with the retaliation count that "[w]ith regard to the knowledge element, Ms. Kiely must prove by a preponderance of the evidence that Mr. Fitton was aware of the MCAD complaint at the time he decided not to rehire her." In addition, the judge reiterated this instruction in response to a question from the jury during deliberations.

580 (1996) ("The second and perhaps most commonly cited in-dicium of an unreasonable or excessive punitive damages award is its ratio to the actual harm inflicted on the plaintiff").

Therefore, this case is in contrast to those cases where there was *affirmative* evidence of an attempted concealment of wrong-ful conduct. For example, in *Ciccarelli* v. *School Dept. of Low-ell*, 70 Mass. App. Ct. at 798, this court upheld an award of punitive damages where the jury could have found that a deputy superintendent's testimony was false *and* was designed to facilitate a cover-up of her wrongdoing. In that case, the city's deputy superintendent of personnel, Flanagan, made the deci-sion not to rehire the plaintiff, Ciccarelli, four days after learn-ing that Ciccarelli appeared on the witness list on behalf of a coworker, Kealy, in Kealy's MCAD case against the school district. *Id.* at 789-790, 796. Flanagan claimed her reason for failing to rehire Ciccarelli was that Ciccarelli had not completed coursework toward advanced certification, despite the fact that this was the first criticism of Ciccarelli's progress and she still had three years to complete the coursework. *Id.* at 789-790. Significantly, Flanagan was an active participant in the Kealy case and was even present at the defense table when Ciccarelli testified at Kealy's MCAD hearing in 1997. *Id.* at 794 & n.3. However, at trial in Ciccarelli's court case, Flanagan testified that, until her deposition in 2002, she was unaware that Cic-carelli had testified on Kealy's behalf. *Id.* at 790-791. Therefore, in *Ciccarelli*, there was affirmative evidence that Flanagan not only lied on the stand about her recollection of Ciccarelli's role in the MCAD case, but also fabricated an excuse for her wrong-ful conduct in failing to rehire Ciccarelli.[6] See *Hall* v. *Ochs*, 817 F.2d 920, 928 (1st Cir. 1987) ("[A] factfinder might infer that the stark clash could not have resulted from innocent mis-recollection, and that its *intentional* quality intensified any need the jury may have found for punishment and deterrence"). Likewise, in *Hall* v. *Ochs*, *supra* at 927-928, the court upheld

---

[6]In addition, in *Ciccarelli* there was another factor, absent from the case at bar, that weighed in favor of upholding punitive damages: "[D]eliberate viola-tions of G. L. c. 151B, by 'those charged with the public duty to enforce the law equally' present a heightened degree of reprehensibility." 70 Mass. App. Ct. at 796, quoting from *Clifton* v. *Massachusetts Bay Transp. Authy.*, 445 Mass. 611, 623-624 (2005).

an award of punitive damages where the defendant police officers argued that the plaintiff's testimony against them was deliberately false and they provided a highly suspect police report to support their allegations.

By contrast, in this case, the defendant's conduct after learning that its failure to rehire Kiely would likely cause harm, and whether the defendant purposely concealed its wrongful conduct, were, as the judge noted, "left to the realm of speculation as these issues were not addressed directly or indirectly by the evidence at trial." As the Supreme Judicial Court made clear in *Haddad*, 455 Mass. at 110, "[t]o sustain an award of punitive damages under G. L. c. 151B, § 4, a finding of intentional discrimination alone is not sufficient." Likewise here, a finding of retaliation alone is insufficient to support the jury's award of $1.1 million in punitive damages; "[a]n award of punitive damages requires a heightened finding beyond mere liability and also beyond a knowing violation of the statute." *Ibid.*

We are also unpersuaded by Kiely's argument that the judge did not consider all of the defendant's underlying retaliatory conduct. The judge examined all the evidence relating to the retaliation and, after careful review of relevant case law, correctly determined that "the retaliation in this case, while reprehensible, simply does not meet the threshold for an award of punitive damages." For example, in *Clifton* v. *Massachusetts Bay Transp. Authy.*, 445 Mass. 611, 613-614, 622, 624 (2005), the Supreme Judicial Court concluded that an award of punitive damages would be appropriate where the jury could have found that the African-American plaintiff was subject to a pattern of egregious racial harassment and retaliation by both his supervisor and coworkers, who "shot bottle rockets at him, turned the lights off when he used the bathroom, sprayed water at him through fire hoses, dropped firecrackers near him, set water boobytraps that would fall on him when he opened his office door, and painted 'fag bait' and 'Sanford and Son' on his locker," among other things.[7] We recognize that "[d]etermining what conduct rises to the level at which an award of punitive dam-

[7]The court in *Clifton* v. *Massachusetts Bay Transp. Authy.*, 445 Mass. at 621-622, ultimately remanded for a new trial on the issue of damages because it concluded that the employer was entitled to the benefit of a jury instruction

ages is appropriate is a difficult task, but the evidence shows that the actions at issue in this case do not." *McMillan* v. *Massachusetts Soc. for the Prevention of Cruelty to Animals*, 140 F.3d 288, 307 (1st Cir. 1998).

b. *Kiely's gender discrimination claim.* Second, Kiely contends that her gender discrimination claim must be remanded for a new trial because the judge erred in (1) failing to instruct the jury on Kiely's termination claim, separate and apart from the rehire claim, and (2) failing to give a statistical evidence jury instruction. We discern no error. The trial judge has wide discretion in framing the language used in jury instructions. *General Dynamics Corp.* v. *Federal Pac. Elec. Co.*, 20 Mass. App. Ct. 677, 684 (1985). "[A] good objection to a charge 'will lie only if a critical issue was not dealt with at all or was dealt with erroneously as a matter of law.' " *Ibid.*, quoting from *Torre* v. *Harris-Seybold Co.*, 9 Mass. App. Ct. 660, 678-679 (1980). An appellate court must review the charge as a whole and in the context of the evidence. See *Wilson* v. *Boston Redev. Authy.*, 366 Mass. 588, 591-592 (1975).

As the trial judge noted, Kiely's case centered on the defendant's decision not to rehire her, in the context of its having laid off her and the two males from GCS and then rehiring the males. Kiely did not claim, and there was no evidence to warrant a trial on a claim, that her termination, by itself, was discriminatory. Indeed, Kiely survived a series of layoffs from 2000 to 2006 until she was one of the last three remaining GCS test technicians at Teradyne, and she was not terminated until the unit was shut down. In making this argument, Kiely seems to rely on the fact that a motion judge had denied Teradyne's motion for summary judgment as to Kiely's termination claim. However, the judge only did this because to separate Kiely's termination claim and her failure to rehire claim "would elevate form over substance." Thus, the motion judge recognized that "the facility closure, termination of the employees, and the rehiring of the two male technicians must logically be considered together." Nevertheless, the motion judge stressed that Kiely's termination, considered by itself without reference to the failure

under the standard expressed in *Cuddyer* v. *Stop & Shop Supermarket Co.*, 434 Mass. 521, 541-542 (2001).

to rehire, cannot support a discrimination claim. This correctly aligns with the trial judge's decision not to give a separate instruction on termination; we therefore discern no error.

Likewise, the trial judge's decision to not instruct the jury regarding Kiely's statistical evidence was soundly within her discretion and consistent with the record evidence. As the judge recognized, Kiely "was given an opportunity to put on expert testimony to explain the significance of the statistics and declined to do so." Additionally, both the motion judge at summary judgment and the trial judge questioned the reliability of Kiely's statistical evidence in demonstrating a general pattern of discrimination. See *Rathbun* v. *Autozone, Inc.*, 361 F.3d 62, 79-80 (1st Cir. 2004) (requiring statistical evidence to "cross a threshold of dependability" to be probative of discriminatory intent).

c. *Teradyne's motion for judgment n.o.v.* We discern no error in the judge's decision to deny the defendant's motion for judgment n.o.v. as to Kiely's retaliation claim.

Here, although the vast majority of evidence presented at trial concerned Kiely's discrimination claim rather than her retaliation claim, and the sufficiency of evidence to support the jury's finding of retaliation was a close question, Kiely established enough of a "toe-hold" to retain her verdict. While the hiring manager, Fitton, testified that he was not told of Kiely's protected activity, i.e., the filing of the MCAD complaint, at the time he made the rehiring decision, the jury could have reasonably inferred from the HR manager's unusual instruction to document this hiring process that Fitton, an experienced manager, understood the reason for this departure and concluded it was because of Kiely's protected conduct. As the trial judge noted, "[a]lthough not compelling by any means, the directive to document the hiring process could have tipped the balance ever so slightly in the minds of the jurors who were instructed to determine if Fitton was aware of the MCAD charge at the time of his hiring decision."

d. *Kiely's motion for attorney's fees under G. L. c. 151B, § 9.* Given our decision to uphold the judge's order to vacate the award of punitive damages and to allow the verdict on retaliation to stand, we must decide whether G. L. c. 151B, § 9, requires an award of attorney's fees where there is a verdict of liability

for discrimination or retaliation, but no damages are awarded. This appears to be a question of first impression. Kiely contends that the plain language of § 9 permits recovery of fees based solely upon a "finding" of liability. This section states: "If the court finds for the petitioner it shall, in addition to any other relief and irrespective of the amount in controversy, award the petitioner reasonable attorney's fees and costs unless special circumstances would render such an award unjust." G. L. c. 151B, § 9, as amended by St. 1974, c. 478. Although in answering the special verdict form, the jury may have "found" for the plaintiff on the retaliation count, the defendant relies on other limiting language in the statute. By analogizing to other statutes and interpretations, the defendant suggests that the statute's use of the phrase "in addition to any other relief" undermines Kiely's argument.

"Where possible, we seek to harmonize statutory provisions, recognizing that the Legislature did not intend one provision of a statute to contradict another." *Birchall, petitioner*, 454 Mass. 837, 849 (2009). Importantly, as the defendant notes, § 9 states the court shall award attorney's fees "*in addition* to any other relief" (emphasis added). In *Jet Line Servs., Inc.* v. *American Employers Ins. Co.*, 404 Mass. 706, 708-709 (1989) (*Jet Line*), the Supreme Judicial Court confronted a situation similar to this case: a motion for attorney's fees under the analogous attorney's fees provision of G. L. c. 93A, § 11,[8] that was also premised on a finding for the plaintiff where there was no relief given. There, the court stated that "the reference [in G. L. c. 93A, § 11,] to an award 'in addition to other relief' indicates that relief solely in the form of attorneys' fees may not be had." *Jet Line, supra* at 718. See *Lord* v. *Commercial Union Ins. Co.*, 60 Mass. App. Ct. 309, 324-325 (2004).

Kiely, however, contends that the statutory differences between G. L. cc. 93A and 151B require us to depart from *Jet Line* in interpreting G. L. c. 151B, § 9. She asserts that G. L. c. 93A is

---

[8]Under this provision, "If the court finds . . . a violation of section 2 [prohibiting unfair competition and unfair or deceptive acts or practices in trade or commerce], the petitioner shall, in addition to other relief provided for by this section and irrespective of the amount of controversy, be awarded reasonable attorneys' fees and costs . . . ." G. L. c. 93A, § 11, inserted by St. 1972, c. 614, § 2.

narrowly focused on recovery for a specific type of loss in that a claim under G. L. c. 93A, § 11, requires a "loss of money or property, real or personal." *Id.,* inserted by St. 1972, c. 614, § 2. Kiely argues that by contrast, G. L. c. 151B has a broad remedial purpose. See G. L. c. 151B, § 9, as appearing in St. 2002, c. 223, § 2 (G. L. c. 151B to be "construed liberally for the accomplishment of its purposes"). See also *Gasior* v. *Massachusetts Gen. Hosp.,* 446 Mass. 645, 654 (2006) ("[T]he broad remedial purposes of G. L. c. 151B mandate[] that the provision concerning remedies available . . . be construed liberally for the accomplishment of the statute's purposes"); *Psy-Ed Corp.* v. *Klein,* 459 Mass. 697, 708 (2011).

We conclude that Kiely's attempts to differentiate G. L. cc. 93A and 151B so as to render the reasoning in *Jet Line* inapplicable to the present case are unpersuasive. First, *Jet Line* expressly rejected Kiely's reading of G. L. c. 93A, § 11, as narrowly tailored to award fees only if the claimant sustained a loss of money or property due to the defendant's unfair or deceptive acts or practice. In fact, the court stated that § 11 "says nothing explicitly about proof of a loss of money or property as a condition to a right to recover attorneys' fees." *Jet Line,* 404 Mass. at 718. Moreover, the Supreme Judicial Court has previously looked to cases interpreting G. L. c. 93A for guidance in deciding issues under G. L. c. 151B, § 9. For example, on the separate issue of how attorney's fees are to be properly calculated under G. L. c. 151B, § 9, the Supreme Judicial Court, in *Fontaine* v. *Ebtec Corp.,* 415 Mass. 309, 324-325 (1993), looked to the "analogous" case law addressing the same issue under G. L. c. 93A. Moreover, the underlying policies of the fee-shifting provisions in both G. L. c. 93A and G. L. c. 151B, § 9, are the same: to encourage attorneys to represent plaintiffs with such claims, where otherwise such actions "are not likely to pay for themselves, but are nevertheless desirable because they vindicate important rights." *Stratos* v. *Department of Pub. Welfare,* 387 Mass. 312, 323 (1982). See *Fontaine* v. *Ebtec Corp., supra* at 326.

Next, Kiely argues that even if we apply the reasoning in *Jet Line* to this case, she is still entitled to attorney's fees. She asserts that although the *Jet Line* court fashioned a rule that dam-

ages usually must be found in order to trigger fee shifting, *Jet Line* still allows for an award of fees upon a showing of "adverse effect." Specifically, the *Jet Line* court stated that "a plaintiff suing under [G. L. c. 93A,] § 11, . . . cannot recover attorneys' fees for merely identifying an unfair or deceptive act or practice. Under § 11, that unfair or deceptive conduct must have had some *adverse effect* upon the plaintiff, even if it is not quantifiable in dollars" (emphasis added). *Jet Line*, 404 Mass. at 718. Because a plaintiff must prove an adverse employment action to prove retaliation, see *Mole* v. *University of Mass.*, 442 Mass. 582, 591-592 (2004), Kiely reasons that she has sufficiently shown a requisite "adverse effect" under *Jet Line* to be entitled to attorney's fees under G. L. c. 151B, § 9.

Such language, however, does not entitle Kiely to attorney's fees when she has been denied any form of relief. In stating that the "unfair or deceptive conduct must have had some adverse effect upon the plaintiff" to sustain an award of attorney's fees, the *Jet Line* court sought to reconcile two previous Appeals Court decisions, *Levy* v. *Bendetson*, 6 Mass. App. Ct. 558 (1978), and *Shapiro* v. *Public Serv. Mut. Ins. Co.*, 19 Mass. App. Ct. 648 (1985). In *Levy, supra* at 566-567, we reversed an award of attorney's fees where the plaintiff failed to prove any damages under G. L. c. 93A, § 11. We reasoned that "[w]here, as here, a single plaintiff is seeking damages as an individual on his own behalf and has been denied any relief under § 11, it would indeed be anomalous to grant him attorneys' fees under that section." *Ibid.*

By contrast, in *Shapiro*, we upheld a grant of attorney's fees under § 11 where "the plaintiff appeared to have lost the use of money but offered no proof of the dollar amount of that loss." *Jet Line*, 404 Mass. at 718. Unlike the party in *Levy*, who was unable to show proof of damages, the plaintiff in *Shapiro* did suffer actual damages but "offered no evidence to show the amount of that loss." *Shapiro, supra* at 657. In *Shapiro*, the plaintiff was required to clean up oil that leaked from his underground fuel tank. *Id.* at 649. However, the defendant insurer, Public Service, disclaimed coverage under the pollution exclusion clause of the policy. *Ibid.* Shapiro then sought recovery on the policy and recovery under G. L. c. 93A, § 11, "based upon

the allegation that Public Service failed to effectuate a prompt settlement of his claim when liability was reasonably clear." *Id.* at 656. To prove his c. 93A claim, Shapiro sought documents as to how Public Service addressed similar claims over the previous five years. *Ibid.* Public Service, however, failed to provide these documents, and thereafter, a motion judge ordered that the documents be produced. *Ibid.* After Public Service again failed to produce the documents pursuant to the discovery order, another judge sanctioned Public Service by entering a finding that its "failure to effectuate prompt, fair and equitable settlement when liability was reasonably clear was wilful." *Ibid.* The discovery sanction, in conjunction with the finding of coverage under the policy, established that Public Service had wilfully committed an unfair or deceptive act or practice in violation of G. L. c. 93A, § 2. Acting under G. L. c. 93A, § 11, the trial judge awarded damages equal to the damages awarded on the policy (costs and expenses of spill clean-up), as well as attorney's fees. *Id.* at 656-657. However, we held the judge erred in awarding Shapiro damages on his c. 93A claim. We reasoned that Shapiro was not entitled to count the amount due to him under the policy, which was the basis of his award under the first count of his complaint, as the basis for an award under G. L. c. 93A, § 11. *Id.* at 657, citing *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 101-102 (1983). Nonetheless, we upheld the award of attorney's fees under § 11. *Id.* at 657, 660. In *Jet Line*, 404 Mass. at 718, the Supreme Judicial Court clarified that "[t]he *Shapiro* case reached the proper result on its facts because the defendant's violation of G. L. c. 93A, § 2, caused a loss of money that, on proper proof of the amount, would have entitled the plaintiff to relief and the award of attorneys' fees was within the statute's purpose."

Arguably, *Shapiro*, *supra* at 660, is unique in that "the unfair act [under G. L. c. 93A, § 2,] [was] established by sanction rather than evidence." Still, the *Jet Line* court concluded that *Shapiro* reached the "proper result" because the sanction presupposed that the plaintiff had been harmed by the defendant's wilful violation of G. L. c. 93A, § 2. Therefore, unlike in *Levy* where the plaintiff was found to have suffered no harm, harm in *Shapiro* was proven by the sanction, and only the amount of

that harm was left in doubt. In effect, the sanction in *Shapiro* was akin to an injunction in that it was a nonmonetary response to harm.

Accordingly, in the c. 93A context, courts have also upheld an award of attorney's fees where a plaintiff received only injunctive relief, but no monetary damages, as an "adverse effect" under *Jet Line*. See *Jillian's Billiard Club of America, Inc.* v. *Beloff Billiards, Inc.*, 35 Mass. App. Ct. 372, 377 (1993) ("The plaintiffs obtained injunctive relief and were also successful in proving that the defendants violated G. L. c. 93A, § 2. The award was warranted. The violation 'had some adverse effect upon the plaintiff[s], even if it [was] not quantifi[ed] in dollars,' " quoting from *Jet Line*, 404 Mass. at 718); *Advanced Sys. Consultants Ltd.* v. *Engineering Planning & Mgmt., Inc.*, 899 F. Supp. 832, 833-834 (D. Mass. 1995). By contrast, in *SMS Financial V, LLC* v. *Conti*, 68 Mass. App. Ct. 738, 748 (2007), this court determined that an award of a preliminary injunction alone cannot support an award of attorney's fees under G. L. c. 93A, § 11. We reasoned that a preliminary injunction, meant to preserve the status quo, cannot provide a basis for attorney's fees where the case was ultimately resolved against the plaintiff. *Ibid.*

Thus, the "adverse effect" language of *Jet Line*, in context, clarifies that a party need not necessarily receive monetary relief to be entitled to attorney's fees under G. L. c. 93A, § 11; a form of nonmonetary relief is sufficient. As this court noted in *Martha's Vineyard Auto Village, Inc.* v. *Newman*, 30 Mass. App. Ct. 363, 369 (1991), the important distinction is between "actual but not clearly measurable damages or loss, contrasted with no actual damage or loss." Actual but not clearly measurable damages or loss, like injunctive relief, would entitle a party to attorney's fees. By contrast, an absence of actual damages or loss would not. Kiely clearly falls into the latter category. Kiely's expert testified that her back pay losses were $213,732 and her front pay losses were $700,292.[9] The jury, however, expressly rejected this testimony by awarding Kiely zero compensatory damages. As discussed above, the jury's award of punitive dam-

---

[9]Teradyne also presented its own witness who testified that Kiely's back pay losses were as low as $44,697.

ages also was rightfully vacated by the trial judge. Therefore, Kiely received no form of relief, damages, an injunction, or otherwise.

Significantly, putting aside the perhaps esoteric distinctions between *Shapiro* and *Levy* in the c. 93A context, to award attorney's fees absent any form of recovery is contrary to the underlying policies of G. L. c. 151B, § 9, see *Fontaine* v. *Ebtec Corp.*, 415 Mass. at 326 ("[General Laws c. 151B, § 9,] is not designed to provide a windfall recovery of fees"), and the great weight of authority that suggests a party must recover in some form to be entitled to attorney's fees.[10] See *Lord* v. *Commercial Union Ins. Co.*, 60 Mass. App. Ct. at 325. See also *Gasior* v. *Massachusetts Gen. Hosp.*, 446 Mass. at 654 n.13 ("If he prevails on his discrimination claim, [the plaintiff] would be entitled to all of the remedies available to a prevailing plaintiff under G. L. c. 151B"); *Ciccarelli* v. *School Dept. of Lowell*, 70 Mass. App. Ct. at 799 ("As we conclude that [the plaintiff] is the prevailing party, we affirm the trial judge's award of attorney's fees"); *Diaz* v. *Jiten Hotel Mgmt. Inc.*, 704 F.3d 150, 153 (1st Cir. 2012) ("Because she was a prevailing party on her state law age discrimination claim, [the plaintiff] was entitled to attorney's fees under [G. L. c. 151B, § 9]"). We also decline to engage in impermissible appellate fact finding by looking beyond the jury verdict to speculate whether Kiely suffered actual, but not clearly measurable, harm. The jury awarded Kiely zero compensatory damages. The award of punitive damages was rightfully vacated. Kiely has obtained no relief.

Consequently, we conclude that a finding of retaliation alone, without *any* form of relief or recovery, cannot support an award of attorney's fees under G. L. c. 151B, § 9. Cf. *Jet Line*, 404 Mass. at 718 ("Under [G. L. c. 93A,] § 11, a plaintiff must be entitled to relief in some other respect in order to be entitled to an award of attorneys' fees"). The judge correctly declined to award attorney's fees to Kiely.

3. *Conclusion.* The judgment, as modified by the order vacating the award of punitive damages, is affirmed. The order vacating the award of punitive damages and otherwise denying

---

[10]We need not specifically compare the Federal prevailing party standard under 42 U.S.C. § 1988, despite the parties' extensive briefing on the subject.

Teradyne's motion for judgment notwithstanding the verdict is affirmed. The order denying Kiely's motion for attorney's fees is affirmed.

*So ordered.*