NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

22-P-1011                                          Appeals Court

COMMONWEALTH  vs.  RICHARD LUGO.

No. 22-P-1011.

Suffolk.     March 14, 2024. – June 20, 2024.

Present:  Meade, Neyman, & Hand, JJ.

Indictments found and returned in the Superior Court Department on December 4, 2019.

The cases were tried before Janet L. Sanders, J.

Homicide. Firearms. Jury and Jurors. Constitutional Law, Jury, Right to bear arms, Harmless error. Due Process of Law, Elements of criminal offense. Evidence, Admission by silence, Consciousness of guilt, Firearm, Argument by prosecutor. Error, Harmless. Practice, Criminal, Jury and jurors, Argument by prosecutor, Instructions to jury, Harmless error.

William M. Driscoll for the defendant.
Kyle E. Siconolfi, Assistant District Attorney, for the Commonwealth.

MEADE, J.  After a jury trial on an indictment that charged first-degree murder, the defendant was convicted of the lesser included offense of voluntary manslaughter.  He was also found

guilty of unlawful possession of a firearm and unlawful possession of a loaded firearm.[1]  On appeal, he claims the judge abused her discretion by allowing the Commonwealth's peremptory challenge to a venire member, the judge abused her discretion by admitting evidence of the defendant's prearrest silence, and the judge erred in her jury instructions on the firearm offenses. We affirm the conviction for voluntary manslaughter, and we vacate his convictions for the firearm offenses.

Background.  In 2019, the defendant shot and killed the victim, Pascual Casiano, at the car repair shop where the defendant was employed as a mechanic.  The victim operated the car dealership adjacent to the repair shop and worked in sales with his nephew, Javier Fonseca.

On the day of the shooting, the defendant and the victim had an argument that escalated into a physical altercation and culminated in the defendant using a handgun to shoot the victim in his abdomen.  The defendant also fired the weapon at Fonseca, who suffered a gunshot wound to his hand.  The bullet that struck the victim ultimately caused his death.

After the shooting, the defendant fled the Commonwealth, where he had lived since 1986.  In the process, he abandoned his

---

[1] The jury acquitted the defendant of armed assault with intent to murder, assault and battery by means of a dangerous weapon, and larceny of a motor vehicle.

cell phone, his job, and several family members, including five of his six children. Arriving in New York, where a son lived, the defendant altered his appearance by cutting off his lengthy dreadlocks, a hair style he had maintained for fifteen years.

The Commonwealth and the defendant offered different theories on who initiated the conflict, who first brandished the gun, whether the defendant had acted in self-defense, and the existence of other mitigating factors in the shooting. The Commonwealth's witnesses portrayed a mutual fist fight between the defendant and the victim that Fonseca attempted to break up, with only the defendant ever being in possession of a gun. The defendant pushed Fonseca and the victim away and then shot them both. Fonseca attempted to retrieve his cell phone from the victim's car to call for help, but the defendant threatened to kill him if he did not get out of the car.

The defendant, on the other hand, testified that it was he who was attacked by the victim and Fonseca. He claimed the duo struck him in the head with a gun as well as a bat and kicked and punched him repeatedly. As a result, the defendant was bleeding, light-headed, dizzy, and he feared for his life. According to the defendant, near the conclusion of the beating, the victim dropped the gun, which the defendant retrieved and fired more than once, striking both men. The defendant claimed he acted in self-defense.

Discussion. 1. The peremptory challenge. The defendant claims for the first time on appeal that the judge abused her discretion by permitting the Commonwealth to exercise a peremptory challenge to exclude an African-American venire member (juror no. 31), who was being treated for a mental health disorder, because the challenge violated the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq. See G. L. c. 234A, §§ 3, 4. The defendant also claims for the first time on appeal that exclusion of juror no. 31 due to his brother being incarcerated in Federal prison on a gun conviction was "disability discrimination clothed as implicit bias." Both assertions lack merit.

Article 12 of the Massachusetts Declaration of Rights, and the Sixth and Fourteenth Amendments to the United States Constitution, guarantee to criminal defendants the right to a trial by an impartial jury. Commonwealth v. Susi, 394 Mass. 784, 786 (1985); Commonwealth v. Soares, 377 Mass. 461, 478-480, cert. denied, 444 U.S. 881 (1979), overruled in part by Commonwealth v. Sanchez, 485 Mass. 491, 511 (2020). Pursuant to these same protections, a party is prohibited from exercising a peremptory challenge on the basis of race or other protected classes. Sanchez, supra at 493; Commonwealth v. Jones, 477 Mass. 307, 319 (2017). See Batson v. Kentucky, 476 U.S. 79, 95 (1986). With that said, the analysis of a peremptory challenge

begins with a presumption that the challenge is proper. See Soares, supra at 489. To analyze an objected-to peremptory challenge, the trial judge must follow a three-step, burden shifting procedure. "[T]o rebut the presumption that the peremptory challenge is proper, the challenging party '"must make out a prima facie case" that it was impermissibly based on race or other protected status "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose."'" Commonwealth v. Kozubal, 488 Mass. 575, 580 (2021), cert. denied, 142 S. Ct. 2723 (2022), quoting Commonwealth v. Jackson, 486 Mass. 763, 768 (2021). "If a party makes such a showing, the burden shifts to the party exercising the challenge to provide a 'group-neutral' explanation for it" (quotation and citation omitted). Sanchez, supra. "Finally, the judge must then determine whether the explanation is both 'adequate' and 'genuine'" (quotation and citation omitted). Id. See Commonwealth v. Kalila, 103 Mass. App. Ct. 582, 587-588 (2023). We review a judge's decision relative to a peremptory challenge for an abuse of discretion. Commonwealth v. Lopes, 478 Mass. 593, 599 (2018).

Here, during a voir dire on the second day of trial, juror no. 31 disclosed both his personal and familial experiences with being arrested and prosecuted, as well as his own history of mental illness. Upon inquiry from the judge, juror no. 31

reported that both he and his brother had been arrested. Juror no. 31's sole arrest from two years prior stemmed from a breaking and entering in the nighttime when he was not taking his medication for his schizoaffective disorder. He reported that he was now stable and had been for the past year, his medication was under control,[2] he had completed "mental health court," and he would be able to hear the evidence and to participate in deliberations. Juror no. 31's brother, with whom he was not close, had been arrested for "drugs and [a] gun," and he was currently in Federal prison. Juror no. 31 did not participate in his brother's trial, and nothing in that case led him to believe that his brother had been treated unfairly or that he would harbor any bias against the police, the prosecutor, or other witnesses in this case.

After defense counsel made a further inquiry related to juror no. 31's medication, and issues related to jury service, the prosecutor exercised a peremptory challenge to juror no. 31. The judge then noted that she considered excusing the juror for cause based on him being treated for a severe mental illness, but she chose not to do so based on juror no. 31's assurances related to being properly medicated. Defense counsel objected

---

[2] Juror no. 31 receives monthly injections of Haloperidol, which are administered at a clinic in the Boston Medical Center.

because juror no. 31 was the second African-American venire member that the prosecutor sought to strike.

When asked by the judge to provide a group-neutral explanation for the challenge, the prosecutor noted the mental health issue but explained that she was concerned that juror no. 31's brother was in Federal prison for a firearm conviction and the defendant in this case was charged with violent firearm offenses. The prosecutor added that her concern was similar to the other African-American juror she had challenged, who had friends that had been charged and convicted of murder.[3]

Defense counsel's position was that in Boston, a large percentage of African-American venire members will have friends or family that have been "arrested, charged or involved in some sort of gun crime." Counsel also noted his initial concern about juror no. 31's medication, and what could occur if he did not take his medication during trial, but added that those concerns were resolved given how the medication was administered on a monthly basis. "[F]or those reasons," the defendant objected. The judge found that the prosecutor's reasons for the peremptory challenge were "group neutral," as well as being "genuine and adequate."

---

[3] The defendant does not claim any impropriety in this venire member being excused.

Here, although the defendant's objection at trial noted that juror no. 31 was being medicated for his mental illness, it was not lodged based on the protections of the ADA or any associated claim of "disability discrimination clothed as implicit bias."  Rather, the objection was based on juror no. 31 being the second African-American the prosecutor had challenged.[4] In this posture, we are presented with an issue that was not raised at trial, and one that does not comfortably avail itself of an ordinary waiver analysis to determine if a substantial risk of a miscarriage of justice exists.  See Commonwealth v. Randolph, 438 Mass. 290, 294-295 (2002).  See also Commonwealth v. Bourgeois, 391 Mass. 869, 877-878 (1984) ("A record in which a party has not had an opportunity to explain the use of peremptory challenges is inadequate to raise a Soares violation").  Because it was not raised at trial, the prosecutor was deprived of the opportunity to explain why her challenge to the juror did not relate to disability discrimination or implicit bias as these arguments did not bloom until appeal.

Moreover, when the basis for a peremptory challenge is made for the first time on appeal, it is simply not possible for the defendant to claim he made a prima facie showing at trial that

---

[4] The defendant supported his objection with a statistical claim regarding African-American jurors likely having a friend or family member involved in some sort of firearm offense.

the totality of the relevant facts gave rise to an inference of discriminatory purpose to overcome the presumption that the challenge was proper. See Kozubal, 488 Mass. at 580. This is compounded by the fact that the crucial opportunity for review by the trial judge, who observed the voir dire, is lost. Importantly, part of the trial judge's review entails her making factual and credibility determinations related to whether the reasons for the challenge were genuine and adequate. See Commonwealth v. Prunty, 462 Mass. 295, 312-313 (2012) (judge's decision on ultimate question of discriminatory intent represents finding of fact). Our appellate office does not equip us to undertake those evaluations. See Commonwealth v. Jones-Pannell, 472 Mass. 429, 438 (2015) (improper for appellate court to engage in independent fact finding). Cf. Kiely v. Teradyne, Inc., 85 Mass. App. Ct. 431, 448 (2014) (declining "to engage in impermissible appellate fact-finding by looking beyond the jury verdict to speculate" as to damages). Lost here is the fact that the defendant's trial was the "main event," and it was not merely a "tryout on the road" to the appeal. Wainwright v. Sykes, 433 U.S. 72, 90 (1977). Appellate review should be based on what occurred at trial, not what might have been. See Commonwealth v. Chase, 433 Mass. 293, 297 (2001); Commonwealth v. Stout, 356 Mass. 237, 243 (1969).

Despite the obstacles in our appellate path, we are able to say on this record that there was no risk that justice miscarried because the judge did not abuse her discretion by excusing juror no. 31.  See Commonwealth v. Colon-Cruz, 408 Mass. 533, 550 (1990) (reviewing Soares challenge raised for first time on appeal by considering whether record on its face supported defendant's claim).  "Article 12 of the Massachusetts Declaration of Rights proscribes the use of peremptory challenges 'to exclude prospective jurors solely by virtue of their membership in, or affiliation with, particular, defined groupings in the community.'"  Commonwealth v. Smith, 450 Mass. 395, 405, cert. denied, 555 U.S. 893 (2008), S.C., 493 Mass. 1037 (2024), quoting Soares, 377 Mass. at 486.  "These groupings are defined by art. 1 of the Massachusetts Declaration of Rights, as amended by art. 106 of the Amendments (Equal Rights Amendment), which protects against discrimination based on sex, race, color, creed, national origin, and sexual orientation."  Commonwealth v. Carter, 488 Mass. 191, 201 (2021).  See Commonwealth v. Aponte, 391 Mass. 494, 507 (1984).  A disability occasioned by mental illness, i.e., schizoaffective disorder in this case, medicated or not, is not a recognized protected class under art. 1.[5]  See United States v. Harris, 197 F.3d 870, 875-

_____

[5] In addition, a person's mental illness is not inextricably linked to any other class catalogued in art. 1, or otherwise

876 (7th Cir. 1999), cert. denied, 529 U.S. 1044 (2000) (for purposes of equal protection analysis, ADA does not provide disabled persons heightened protection as suspect class against peremptory challenges).  See also Demunn v. State, 627 So.2d 1005, 1006-1007 (Ala. Crim. App. 1991), aff'd, 627 So.2d 1010 (Ala. 1992) (concluding that striking of venire member on basis of disability was "race-neutral" reason); Donelson v. Fritz, 70 P.3d 539, 544 (Colo. App. 2002) (holding that "Batson does not apply to peremptory challenges to persons with disabilities").  Cf. Williams v. Secretary of the Executive Office of Human Servs., 414 Mass. 551, 564-565 (1993) (rejecting equal protection claims of "homeless mentally ill" for lack of suspect classification or fundamental interest at stake).  In this light, even if the ADA claim had been made at trial, it would not have provided juror no. 31 with heightened protection due to his mental illness.  That is, "the totality of the relevant facts" would have failed "to raise an inference of a discriminatory purpose."  See Sanchez, 485 Mass. at 511.

Furthermore, a review of the record before us reveals that the judge accepted the prosecutor's "genuine" and "adequate" justification for her peremptory challenge of juror no. 31.

---

expanded.  See Carter, 488 Mass. at 201, citing Bostock v. Clayton County, Ga., 590 U.S. 644, 660-661 (2020) (recognizing that discrimination based on sexual orientation is inextricably linked to discrimination based on person's sex).

Even though the prosecutor noted that juror no. 31 had a mental health issue in her discussion with the judge, the animating concern that prompted the prosecutor's peremptory challenge was that juror no. 31's brother was in Federal prison for a firearm conviction, as this was one of the offenses for which the defendant was standing trial.[6] As this was a similar reason for which another African-American juror had been properly struck without objection, there is no support for the defendant's claim that the challenge to juror no. 31 was "disability discrimination clothed as implicit bias."[7]

---

[6] To the extent the defendant claims that this case involved an improper, race-based peremptory challenge, which he raises for the first time in his reply brief, it is waived. See Commonwealth v. Hampton, 64 Mass. App. Ct. 27, 33 n.8 (2005). Even if it were not waived, for the same reasons stated in the text above, the defendant failed to demonstrate that the judge abused her discretion. See L.L. v. Commonwealth, 470 Mass. 169, 185 n.27 (2014).

[7] Also, for the first time on appeal, the defendant claims that the allowance of the peremptory challenge to exclude juror no. 31 violated his right to an impartial jury under the State and Federal Constitutions. We disagree. Defendants are guaranteed a venire that represents a fair cross section of the community, and a violation occurs where a distinctive group has been systemically excluded from the venire. See Commonwealth v. Evans, 438 Mass. 142, 149 (2002), cert. denied, 538 U.S. 966 (2003), citing Taylor v. Louisiana, 419 U.S. 522, 537-538 (1975). Here, the defendant's claim lacks the factual predicate to establish that mentally ill venire members constitute "a distinctive group" or that such persons have become "significantly underrepresented in the venire." Evans, supra at 149-150.

2. <u>Prearrest silence</u>. The defendant further claims that the prosecutor twice impermissibly asked the defendant about his prearrest silence, and improperly employed that silence in her closing argument. In the first instance during her cross-examination of the defendant, the prosecutor asked whether, after the shooting, he "[drove] to the police station to report what happened." The second occurred when the prosecutor asked the defendant whether he "use[d] the phone to call the police." Over objections, the defendant answered both questions in the negative. Although we agree that the questions and the argument[8] on the matter were improper, the defendant did not suffer any unfair prejudice.

Because these claimed errors were preserved, we must determine whether the improper questions and argument constituted prejudicial error. "An error is not prejudicial if it 'did not influence the jury, or had but very slight effect'; however, if we cannot find 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the

---

[8] In part, to rebut the suggestion that the defendant acted in self-defense, the prosecutor argued in her closing that "despite alleging that he was the victim, the defendant doesn't drive to the police station, he doesn't call the police, and he doesn't tell you in his timeline of events that he ever sought any medical treatment as a result of this allegedly severe beating." The defendant objected to this portion of the argument.

error,' then it is prejudicial." Commonwealth v. Cruz, 445

Mass. 589, 591 (2005), quoting Commonwealth v. Flebotte, 417

Mass. 348, 353 (1994).  See Kotteakos v. United States, 328 U.S.

750, 764-765 (1946).  Under this standard, we ask "whether the

references to the defendant's prearrest silence improperly led

the jury to ascribe 'consciousness of guilt' to the defendant."

Commonwealth v. Correira, 492 Mass. 220, 236 (2023).  See

Commonwealth v. Pierre, 486 Mass. 418, 433 (2020).

In Jenkins v. Anderson, 447 U.S. 231, 238-239 (1980), the

United States Supreme Court held that a defendant's prearrest

silence may be used to impeach his credibility without violating

the self-incrimination privilege of the Fifth Amendment to the

United States Constitution, as applied to the States through the

Fourteenth Amendment, or the fundamental fairness guarantee of

the Fourteenth Amendment.  Nonetheless, the Court left it to the

States to "formulate [their] own rules of evidence to determine

when prior silence is so inconsistent with present statements

that impeachment by reference to such silence is probative."

Id. at 239.

In Commonwealth v. Nickerson, 386 Mass. 54, 62 (1982), the

Supreme Judicial Court determined, as a matter of common law,

that impeachment of a defendant with the fact that he had an

opportunity to tell the police his story prior to his arrest

must be approached with caution.  If undertaken, there must be a

foundation laid demonstrating that it would have been "natural" for the defendant to speak in such circumstances.  Id.  See Mass. G. Evid. § 613 note, at 201-202 (2024).  See also Commonwealth v. Gardner, 479 Mass. 764, 770 (2018); Commonwealth v. Sosa, 79 Mass. App. Ct. 106, 110 n.4 (2011).  One aspect of the common law rule is that a defendant's decision not to speak with police may not be used as substantive evidence of consciousness of guilt.  See Pierre, 486 Mass. at 433.

Despite the seeming incongruity of a self-defense claiming defendant to not contact or speak to the police, the Supreme Judicial Court has repeatedly noted that "there may be many reasons why a defendant does not wish to come forward and speak to the police that have no bearing on his [or her] guilt or innocence."  Correira, 492 Mass. at 234, quoting Gardner, 479 Mass. at 769.  See Commonwealth v. Niemic, 472 Mass. 665, 673 (2015), S.C., 483 Mass. 571 (2019) (defendant, who claimed self-defense at trial, would not naturally have contacted police prior to arrest).  Compare Pierre, 486 Mass. at 434, citing Commonwealth v. Barnoski, 418 Mass. 523, 534 (1994) (not natural for defendant to contact police where "no immediate danger to another that could have created an incentive to contact the police to get help").

Here, in response to the defendant's objections, the judge cautioned the prosecutor to proceed with care because the

defendant did not have an obligation to speak to the police. At that point, the prosecutor did not lay a foundation or utilize other evidence to illustrate that it would have been natural for the defendant to speak in these circumstances. However, she merely established that the defendant had the opportunity to drive to the police station or call the police, but not that he had a duty to clear his name. Importantly, although the questions were improper, the prosecutor never directly asked the defendant why he did not tell the police that he acted in self-defense or why he did not clear his name, but she did argue in closing that a person acting in self-defense would have done so. See Pierre, 486 Mass. at 433 (improper to consider defendant's failure to "clear his name" as evidence of consciousness of guilt). See also Nickerson, 386 Mass. at 61 ("the judge should not have instructed the jury that, in assessing the reliability of the defendant's testimony, they could consider the defendant's prearrest failure to tell the police" that another person committed the crime).

To determine whether the error did not influence the jury, or had but very slight effect, "we ask whether the references to the defendant's prearrest silence improperly led the jury to ascribe 'consciousness of guilt' to the defendant." Correia, 492 Mass. at 236. Cf. Pierre, 486 Mass. at 433. Where there is other, properly admitted evidence of consciousness of guilt, and

the improper references to prearrest silence are cumulative of that properly admitted evidence, unfair prejudice is unlikely. See Correira, supra at 236-237.  Here, the defendant's testimony on direct and cross-examination provided strong, if not compelling, evidence of his consciousness of guilt.  In the immediate aftermath of the shooting, the defendant fled his long-term Massachusetts home and went to New York.  See Commonwealth v. Martin, 467 Mass. 291, 297, 309-310 (2014) (defendant's flight from Massachusetts to Virginia demonstrated consciousness of guilt).  He left behind his belongings; his cell phone (which he always carried); his job; and several family members, including five of his six children.[9]  In New York, he altered his appearance by changing the distinctive hair style he had been wearing for fifteen years.  See Commonwealth v. Carrion, 407 Mass. 263, 277 (1990) (evidence that defendant altered his appearance after murder admissible to show consciousness of guilt).  Also, rather than purchasing a new

---

[9] Also, the defendant testified that he could not remember where he left the car that he purportedly borrowed when he fled the scene of the shooting.  He later claimed that he had another person notify the car's owner of its whereabouts, but then returned to not remembering where he left the car before agreeing that he left it in the Hyde Park section of Boston. See Commonwealth v. Edgerly, 390 Mass. 103, 109 (1983) ("a defendant's wilfully untrue testimony as to a material fact tends to show consciousness of guilt" [quotation and citation omitted]).

cell phone under his own name when he arrived in New York, the defendant used his son's phone. All these matters provided the jury with exceptionally strong evidence of consciousness of guilt that overwhelmed or rendered merely cumulative the improperly admitted evidence of the defendant's prearrest silence.[10] See Correira, supra; Pierre, supra at 434-435.

In addition to the properly admitted evidence of the defendant's consciousness of guilt, the jury were also presented with strong evidence of the defendant's role in the shooting. This included the defendant's admission that he took the gun and fired shots at the victim, and the eyewitness corroborations that the defendant had the gun and shot the victims. Finally, any evaluation of prejudice in this case must include an examination of the verdicts. On an indictment charging first-degree murder, the jury convicted the defendant of the lesser included offense of voluntary manslaughter. The most plausible explanation for this is that the jury largely credited the defendant's testimony regarding his mitigating view of the case presented by the Commonwealth. In the end, when looking at the entire trial, we conclude that the improperly admitted evidence

---

[10] Furthermore, in the judge's jury instruction on consciousness of guilt, she expressly referenced evidence that the defendant "may have fled to New York" and "may have changed his appearance," but she made no reference to the defendant's prearrest silence vis-à-vis the police. This further limited any prejudice resulting from the improperly admitted evidence.

and the subsequent argument did not influence the jury, or that it had but very slight effect.  See Cruz, 445 Mass. at 591.  The defendant did not suffer any unfair prejudice.

3.  Firearm offenses.  Finally, the defendant claims that the judge erred by failing to instruct the jury that as an element of the crimes of unlawful possession of a firearm and unlawful possession of a loaded firearm,[11] the Commonwealth had the burden of disproving that the defendant had a license to possess a firearm.  We agree.

In Commonwealth v. Guardado, 491 Mass. 666 (2023) (Guardado I), S.C., 493 Mass. 1 (2023) (Guardado II), petition for cert. filed, U.S. Supreme Ct., No. 23-886 (Feb. 14, 2024), the Supreme Judicial Court held that the due process clause of the Fourteenth Amendment and the Second Amendment to the United States Constitution require the Commonwealth to bear the burden of disproving that a defendant had a license to possess a firearm when prosecuting a defendant for unlawful possession of a firearm, and the jury instructions must relay this burden. Guardado I, supra at 668, 692-693.  Where the judge does not

---

[11] "Illegal possession of a loaded firearm, under G. L. c. 269, § 10 (n), is not an independent charge but, rather, 'constitute[s] further punishment of a defendant who also [has] been convicted under G. L. c. 269, § 10 (a).'"  Commonwealth v. Guardado, 491 Mass. 666, 670 n.4 (2023) (Guardado I), S.C., 493 Mass. 1 (2023) (Guardado II), petition for cert. filed, U.S. Supreme Ct., No. 23-886 (Feb. 14, 2024), quoting Commonwealth v. Tate, 490 Mass. 501, 520 (2022).

instruct on this burden, and where there is an absence of record evidence on the lack of license, the defendant is entitled to vacatur of the conviction.  See Commonwealth v. Gibson, 492 Mass. 559, 579 (2023).  The Supreme Judicial Court's holding in Guardado I "applies prospectively and to those cases that were active or pending on direct review as of the date of the issuance of [New York State Rifle & Pistol Ass'n v. Bruen, 597 U.S. 1 (2022) (Bruen)]."  Guardado I, supra at 694.  Because the instant defendant's direct appeal was pending at the time of the issuance of Bruen on June 23, 2022, he is entitled to the application of Guardado I.  See Gibson, supra; Guardado I, supra.  In Guardado II, the Supreme Judicial Court clarified that the remedy for an improper jury instruction outlined in Guardado I was a new trial, and not a judgment of acquittal. See Commonwealth v. Sosa, 493 Mass. 104, 120 (2023).

Here, it is undisputed, and understandably so, that the judge did not instruct on an element of the firearm offenses that did not exist at the time of trial.  On our review of the record, we could find no direct evidence that was introduced to support any claim that the defendant did not have the necessary license.  Contrast Commonwealth v. Bookman, 492 Mass. 396, 401 (2023) (failure to give licensure instruction was harmless beyond reasonable doubt where there was undisputed testimony

that defendant had no license). The Commonwealth does not claim otherwise.

Instead, the Commonwealth claims that there was circumstantial evidence from which an inference can be drawn to support the conclusion that the defendant was not licensed. As a result, it asserts that the error was harmless beyond a reasonable doubt. See Bookman, 492 Mass. at 401. That circumstantial evidence included the defendant's testimony that the gun did not belong to him; Fonesca tried to sell him the gun around a month prior to the shooting; the victim beat the defendant with the gun; and the defendant only picked up the gun when it was dropped during that beating. From these facts, which were not part of the Commonwealth's case, the Commonwealth claims that the jury could reasonably infer that the defendant was not properly licensed, as he did not own the gun and thus had no reason to be licensed. We disagree.

The Commonwealth is correct that inferences from circumstantial evidence need only be "reasonable and possible," and not "necessary or inescapable." Commonwealth v. Casale, 381 Mass. 167, 173 (1980). However, "[t]he question of guilt must not be left to conjecture or surmise." Commonwealth v. Anderson, 396 Mass. 306, 312 (1985). Here, the inference that the defendant was not licensed is merely conjecture. The suggestion that the defendant was unlicensed because he did not

own the gun used in the shooting does not a fortiori establish that he was unlicensed to own any gun. But even if the inference was permissible, for purposes of the harmless beyond a reasonable doubt analysis, the question is not whether the inference supporting the missing element is reasonable and possible. Rather, it is whether "the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error." Commonwealth v. McCray, 93 Mass. App. Ct. 835, 847 (2018), quoting Neder v. United States, 527 U.S. 1, 17 (1999). In this light, even assuming the permissibility of the inference, the evidence of the defendant not being licensed was certainly not overwhelming. Accordingly, the error was not harmless beyond a reasonable doubt, and the defendant is entitled to a new trial on the firearm indictments.

4. Conclusion. For the reasons set forth above, we affirm the defendant's conviction of voluntary manslaughter. We vacate and set aside his convictions of unlawful possession of a firearm and unlawful possession of a loaded firearm and remand the case for further proceedings consistent with this opinion.

So ordered.